## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE

In re: Bankruptcy Case

ANTHIA K. HENDRIX
aka ANTHEA K. HENDRIX

Debtor

Case No. 3:20-bk-32684-SHB

Chapter ___7_____

---

### PRO SE DEBTOR'S MOTION TO VACATE JUDGMENT AND WAIVER

**COMES NOW** Anthea Hendrix, Pro Se, and pursuant to E.D. Tenn. LBR 4003.2 moves this Court to vacate, reverse and otherwise grant relief from a judgment obtained against Ms. Hendrix taxing her with attorneys' fees for Jodi Loden (Jennifer McKaig), Jennifer Chadwell, and Daniel Forrester totaling $115,109.20 that was obtained by fraud on the court as defined in Tenn. R. Civ. P. 60.02 and Fed. R. Civ. P. 60(b). The Debtor would show this honorable court:

### Federal Rules of Civil Procedure 60(b) Mistakes – Inadvertence – Excusable Neglect - Fraud

The trial court erred in its judgments through fraud perpetrated by Jennifer McKaig, Ms. McKaig's counsel, Jodi Loden, Guardian Ad Litem (GAL) Jennifer Chadwell, and the Ward's Attorney Ad Litem (AAL), Daniel Forrester, who passively participated in fraud on the court by ceasing to advocate for the Ward after the March 6, 2019 hearing when his testimony on the Ward's behalf was dismissed by the trial court judge. Mr. Forrester made no attempt to arrange transportation for the Ward to attend any of the court proceedings, nor did he attempt to arrange for the Ward to testify by phone or via Zoom at hearings or at trial. Further, Mr. Forrester did not file one motion on the Ward's behalf and refused to help him put together an affidavit for the July 15, 2019 court hearing. Both the GAL and Ms. Loden suborned perjury in affidavits to the court; Ms. Loden's affidavit that used as the basis for a permanent no-contact order restraining Ms. Hendrix from having any contact with her son reached the level of criminal subornation of aggravated

1

perjury. The entire case was calculated, orchestrated fraud on the court by Jennifer McKaig and the officers of the trial court, explained as follows:

**At the February 11, 2019 court proceeding**, Chancellor Nicole Cantrell refused to admit the Ward's affidavit (Exhibit A) as evidence against the Temporary Restraining Order (TRO), for which Ms. McKaig (the Plaintiff) had no admissible evidence. The Ward's first AAL had withdrawn due to a conflict of interest and the Ward was not represented. The Ward had a legal right to testify against the TRO by any means available, including by affidavit through opposing counsel pursuant to T.C.A. § 34-3-106 and § 34-3-108(f).

**At the February 25, 2019 court proceeding**, the GAL and not counsel for the Respondent motioned this Court for a continuance after Respondent made no effort to comply with this Court's February 11, 2019 Order (Exhibit B) for an immediate medical evaluation to determine whether a TRO was warranted. The GAL suborned perjury in her affidavit to the trial court (Exhibit C), falsely averring that Dr. Amin would not be available until Feb. 27, 2019.

**At the March 6, 2019 TRO Proceeding**, the following fraud and abuses occurred:

1. Although counsel for Ms. Hendrix provided evidence (Exhibit D) that Jennifer Chadwell submitted a false affidavit to the trial court regarding Dr. Amin's availability, *the trial court refused to address her fraud on the court*. ***Bulloch v. United States***, 763 F.2d 1115, 1121 (10th Cir. 1985).

2. Jennifer McKaig (Plaintiff) had been ordered to obtain an immediate medical evaluation to determine whether a TRO was warranted, but Ms. McKaig refused. Instead, Ms. McKaig provided inadmissible hearsay from Dr. Amin (Exhibit E), who wrote that he barely knew the Ward and relied on the group home manager's input regarding Ms. Hendrix's visits. Neither Dr. Amin nor the group home manager had ever met Ms. Hendrix and neither had personal knowledge of her visits with her son.

3. Contrary to the Tennessee Rules of Evidence, which requires testimony in a hearing or legally admissible evidence, the trial court accepted Dr. Amin's third-party hearsay as valid medical evidence and allowed the TRO that was never validated by admissible evidence or witness testimony to become a restraining order and injunction. No one testified at the hearing as required under T.R.C.P. 65.04(6) and Ms. Hendrix motioned to have the TRO dissolved (Exhibit F), yet the TRO was left in place indefinitely. ***Milton v. Harness***, No E2017-00092-COA-R10-CV, 2017 Tenn. App. LEXIS 154, at *13 (Ct. App. Mar. 3, 2017) (citing ***Smith v. Smith***, Appeal No 01A01-9511-CH00536, 1996 Tenn. App. LEXIS 585, at *9 (Ct. App. Sep 18, 1996.))

4. The Ward provided a handwritten letter to the trial court on March 6, 2019 (Exhibit G) disputing Ms. McKaig's unsubstantiated allegation that the Debtor's visits caused him to have setbacks and an explosive episode. However, the trial court judge refused to admit the Ward's handwritten letter in violation of T.C.A. § 34-3-106 and § 34-3-108(f).

5. AAL Daniel Forrester attempted to advocate for the Ward against the TRO at the March 6, 2019 hearing, but the judge dismissed the AAL's testimony in violation of T.C.A. § 34-3-106.

The trial court failed in its constitutional duty to admit the Ward's testimony by any means he had available, whether by affidavit or petition through opposing counsel or from his mother, pursuant to T.C.A. § 34-3-106 and § 34-3-108(f). The trial court was clearly not concerned about protecting the Ward, but only with preventing the Ward from testifying since his testimony would have unraveled the lies that were the basis for the TRO and was critical to Ms. Hendrix's defense against unsubstantiated allegations. The decision to dismiss the testimony of a grown man based on his disability was orchestrated fraud on the court by Ms. McKaig and the officers of the trial court, which requires vacating the trial court judgments. ***Kenner v. C.I.R.***, 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."

***At the March 28, 2019 TRO Proceeding***, the trial court judge issued a bench order instructing all parties to agree on a doctor for the medical evaluation or bring her three names each to choose from. On April 4, 2019, all parties agreed to Dr. Keith Caruso for the evaluation (Exhibit H). Ms. Hendrix had been forced to motion for a second order for a medical evaluation after Ms. McKaig refused to comply with the first order. Exhibit I is email evidence from Dr. Caruso that Ms. McKaig also violated that Order. The trial court would not enforce the orders or hold Ms. McKaig accountable for violating them.

### Tenn. Code Jud. Con. Rule 10, Canon 2.3 – Bias, Prejudice and Harassment

***At the July 8, 2019 court proceeding***, Ms. McKaig demonstrated contempt for the trial court when she motioned for another medical evaluation with her personal choice of doctors after she had violated the February 11, 2019 and March 28, 2019 Court Orders. ***Three months after Dr. Caruso began his evaluation in compliance with the March 28, 2019 bench order***, the trial court judge waved her bench order and granted Ms. McKaig's motion, forcing Ms. Hendrix to pay $6,400 for a medical evaluation Ms. McKaig had been ordered to obtain for her TRO. Rule 10 § 2.3(b) requires:

"A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so."

***In re: Lee Medical, Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010), "Discretionary decisions must take the applicable law and relevant facts into account." *Konvalinka v. Chattanooga–Hamilton County Hosp. Auth.,* 249 S.W.3d 346, 358 (Tenn.2008); *Ballard v. Herzke,* 924 S.W.2d 652, 661 (Tenn.1996). The Chancellor and the other officers of the trial court have demonstrated open hostility and unlawful harassment toward Ms. Hendrix in court proceedings. This never happened when Respondent was represented by Mr. Routh or Ms. Mostoller. The Chancellor is required under Tenn. Code Jud. Con. Rule 10, Canon 2.3(C) to:

"A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, *age*, sexual orientation, *marital status*, *socioeconomic status*, or *political affiliation*, against parties, witnesses, lawyers, or others."

***At the July 15, 2019 court proceeding***, the following fraud and abuses occurred:

1.  Jodi Loden, counsel for Ms. McKaig, produced a false affidavit at the court hearing (Exhibit J), which she admitted fabricating to Ms. Hendrix's former attorney. Ms. Loden suborned aggravated perjury, impugning Ms. Hendrix with completely false allegations and persuaded the Ward's young Medicare psychiatrist, Dr. Rakesh Amin, to perjure himself by signing the affidavit on July 12, 2019—three days before the hearing. The allegations in the false affidavit dramatically conflicted with Dr. Amin's February 27, 2019 affidavit, in which he wrote that he barely knew the Ward. The affidavit was accepted on the spot at the July 15th, 2019 court hearing as valid medical evidence and the unlawful restraining order and injunction was expanded to a no-contact order. Ms. Hendrix objected to the false affidavit (Exhibit K). The Ward also provided an affidavit protesting the restraining order, which was promptly dismissed by the trial court. **This was the second time the trial court refused to address fraud on the court by an officer of the court.**

2.  After the Ward had tried unsuccessfully for two weeks to reach his attorney for help getting to the July 15 court proceeding or help putting together an affidavit for the hearing, Ms. Hendrix finally agreed to help her son prepare an affidavit so that he could have a voice in the proceedings pursuant to T.C.A. § 34-3-106 and § 34-3-108(f). Although the Ward had a legal right to testify by any means available and Ms. Hendrix had a legal right to help her son pursuant to T.C.A. § 34-3-108(f), Ms. Hendrix was charged with contempt of the unlawful restraining order for helping her son and as placed under a no-contact order that remains in effect today.

3.  Ms. Hendrix objected to the Order based on lies and false allegations and refused to sign the Order (Exhibit L). **In re *Kenner v. C.I.R.***, 387 F.3d 689 (1968), The 7th Circuit stated: "A decision produced by fraud upon the court is not in essence a decision at all, and never becomes

final." *Mireles v. Waco*, 502 U.S. 9, 116 L Ed 2d 9, 14, 112 Sup. Ct. 286 (U.S. 1991), "A judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."

4.   Every time the trial court refused to hear the Ward's testimony, whether through affidavit or counsel, violated his constitutional rights per Title 18, U.S.C., Section 242, Deprivation of Rights Under Color of Law:

> "It is a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S."

The no-contact order based on a false affidavit and a false charge of contempt violated Ms. Hendrix's rights pursuant to Title 18, U.S.C., Section 241, Conspiracy Against Rights:

> "It is unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States, (or because of his/her having exercised the same)."

*At the July 22, 2020 pre-trial hearing*, the following fraud and abuses occurred:

1.   The trial court judge advised Jodi Loden (counsel for Ms. McKaig) to delay her motion to dismiss Ms. Hendrix's case and tax all attorneys' fees to Ms. Hendrix (Exhibits M and N) until trial. The judge informed Ms. Hendrix's counsel that Ms. Hendrix's amended motions for removal of conservator had been invalid since Ms. Hendrix had not had leave of the court to file them. The trial court judge gave Ms. Hendrix five calendar days to re-file her November 5, 2018 amended petition for removal of conservator (Exhibit O, August 27, 2020 Amended Petition). Ms. Hendrix was unaware that by amending her petition, she unwittingly placed herself in a position where the trial court judge could dismiss her non-existent case and tax all attorneys' fees to Ms. Hendrix for Ms. McKaig's two-year long restraining order case against her. ***This was further fraud on the court by an officer of the court***. ***In re Palowsky v. Campbell***, 285 So. 3d 466, Sup. Ct. (2019), the U.S. Supreme Court opined: "Thus, judges and law clerks are not above the law, but are rightfully accountable." Tenn. R. Civ. P. 60.02 provides:

"On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) *fraud (whether heretofore denominated intrinsic or extrinsic)*, misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment."

2. The trial court judge denied Ms. Hendrix's counsel a continuance to prepare a defense for his client although the judge knew that counsel did not have adequate time to prepare (Exhibit P). The trial court judge blamed her decision on Ms. Hendrix's "behavior in the beginning of the case." This was an admission of unlawful bias pursuant to Tenn. Code of Jud. Conduct Rule 10, Canon 2.3, making the judgments null and void.

*On July 27, 2020, Ms. Hendrix re-filed her Amended Petition for Removal of Conservator* in which she proposed sharing conservatorship with Ms. McKaig pursuant to T.C.A. § 35-50-107 that requires non-resident full conservators to share conservatorship with a Tennessee resident, and T.C.A. § 34-3-103 that gives close relatives (spouse, child, parent) priority to serve as conservator. Ms. Hendrix set forth reasons why Ms. McKaig should not serve as the Ward's full conservator unless she shares conservatorship with a resident and close family member.

*At the August 12 and 13, 2020 trial*, the following fraud and abuses occurred:

1. Ms. McKaig subpoenaed two trial witnesses with personal knowledge of her relationship with her son. The Ward's former Helen Ross McNabb case managers (Exhibits Q and R) testified that Ms. Hendrix had acted responsibly as her son's former conservator. A long-time family friend also testified (Exhibit S) to Ms. Hendrix's loving relationship with her son and the fact that the Ward was opposed to the restraining order.

2. Ms. McKaig did not produce one trial witness who knew Ms. Hendrix or her son, but subpoenaed police officers to testify regarding issues that were irrelevant to the case. Ms. McKaig's

attorney made no effort to show cause for why the restraining order should remain in effect and instead spent three hours grilling Ms. Hendrix on a case that had been dismissed and expunged from her record in early 2015. No evidence was presented at trial to justify dismissing Ms. Hendrix's "Complaint" and taxing all attorneys' fees to her.

3.   Although Ms. Hendrix produced three trial witnesses who disputed the false allegations against Ms. Hendrix and validated Ms. Hendrix's testimony in the case, Ms. Hendrix's "case" was stricken and she was taxed with Ms. McKaig's attorney's fees: $78,784.20, Jennifer Chadwell's (GAL's) fees: $19,040, and Daniel Forrester's (AAL's) fees: $17,285.00. See Exhibit T. ***This is a violation of Title 18, U.S.C., Section 241, Conspiracy Against Rights.***

4.   The trial court judge's order to waive the stay (Exhibit T) required under Tenn. R. Civ. P. 54.04 to tax everyone's attorneys' fees to Petitioner's inheritance in Washington State probate without any evidence that Ms. Hendrix would hide her inheritance is further evidence of fraud on the court by officers of the court. Ms. Hendrix objected to the Order and Motioned the trial court to set aside the judgments pursuant to Tenn. R. Civ. P. 60.02 (Exhibit U). The motion was denied.

**WHEREFORE**, Ms. Hendrix moves this court to vacate the judgment and waiver, and grant further relief to which Ms. Hendrix may be entitled.

Submitted this 31st day of December, 2020.

Respectfully submitted by:

*Anthea Hendrix*

Anthea Hendrix, Pro Se
107 Flenniken Ave, Apt 201
Knoxville, TN 37920
Phone: 615-891-8337
Email: akh129@yahoo.com

## LIST OF EXHIBITS

EXHIBIT A – Joel McKaig's February 7, 2019 Affidavit ...................................................... 10

EXHIBIT B – February 11, 2019 Order for Immediate Medical Evaluation ...................... 11

EXHIBIT C – Guardian Ad Litem's Perjured Affidavit .................................................... 12

EXHIBIT D – Evidence of GAL's fraud on the court .................................................... 14

EXHIBIT E – Dr. Rakesh Amin's February 27, 2019 Affidavit ...................................... 15

EXHIBIT F – Ms. Hendrix's Motion to Dissolve the Temporary Restraining Order ...................... 16

EXHIBIT G – Joel McKaig's Handwritten Letter to the Court ...................................... 18

EXHIBIT H – Dr. Caruso's CV, Evidence that All Parties Agreed Per Chancellor's Bench Order . 19

EXHIBIT I – Email Evidence That Jennifer McKaig Violated March 28, 2019 Bench Order ......... 21

EXHIBIT J – July 12, 2019 False Affidavit .................................................................. 22

EXHIBIT K – Ms. Hendrix Objected and Motioned to Have Restraining Order Dismissed ........... 26

EXHIBIT L – July 15, 2019 No-Contact Restraining Order .......................................... 34

EXHIBIT M – Ms. McKaig's Motion to Strike Ms. Hendrix's "Complaint" ................... 45

EXHIBIT N – Court Order Dismissing Ms. Hendrix's "Complaint" and Taxing Fees ................... 51

EXHIBIT O – August 27, 2020 Amended Petition for Removal of Conservator ........................... 62

EXHIBIT P – Order Denying Ms. Hendrix's Counsel a Continuance ............................... 75

EXHIBIT Q – Trial Subpoena 1 .................................................................................. 90

EXHIBIT R – Trial Subpoena 2 .................................................................................. 92

EXHIBIT S – Certified Affidavit of Elisa Katschka .................................................... 94

EXHIBIT T – Court Order for Fees and Waiver .......................................................... 98

EXHIBIT U – Ms. Hendrix's Motion to Set Aside Trial Judgments ............................... 101

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing Motion was duly served upon all counsel of record herein by mailing a copy of the same via e-mail:

Jodi B. Loden, Attorney for Respondent
6330 Baum Drive
Knoxville, TN 37919
jodi.loden@petersonwhite.com

F. Scott Milligan, Esq.
900 E Hill Ave. Ste. 130
Knoxville, TN 37915
fsmilligan@outlook.com

Jennifer Chadwell, Guardian Ad Litem
240 West Tennessee Avenue
Oak Ridge, TN 37830
Jchadwell@jenniferchadwellattorney.com

United States Trustee
Howard H. Baker Jr., U.S. Courthouse
800 Market Street, Suite 114
Knoxville, Tennessee 37902

H. Daniel Forrester, Attorney Ad Litem
711 S. Charles G. Seivers Blvd.
Clinton, TN 37716
forresterlaw@comcast.net

*Anthea Hendrix*
_____
Anthea Hendrix, Petitioner Pro Se

EXHIBIT A – Joel McKaig's February 7, 2019 Affidavit

## IN THE CHANCERY COURT FOR ANDERSON COUNTY, TENNESSEE

IN RE:      THE LIMITED CONSERVATORSHIP
              OF JOEL McKAIG

ANTHEA HENDRIX TOUTGES,

                      Petitioner,

v.                                No.: 01CH1436

JENNIFER McKAIG,

                      Respondent.

---

### AFFIDAVIT OF JOEL MCKAIG REGARDING VISITATION WITH MOTHER

---

STATE OF TENNESSEE         )

COUNTY OF _ Wilson_____)

Joel McKaig, after being duly sworn according to law, deposes and says:

1. That I am the Ward in the above-referenced matter.
2. That I have been made aware that my sister, Jennifer McKaig, has filed for a temporary restraining order and injunction restricting my mother Anthea Hendrix's visitation with me.
3. That I enjoy and look forward to visits with my mother and would like for those visits to continue for the foreseeable future.
4. That I do not want any ruling to be made against my mother or her visitation rights until I have the opportunity to be appropriately and fully represented by an Attorney ad Litem in this matter.
5. That I am therefore opposed to my sister's request for a temporary restraining order and injunction.

Further the affiant saith not.

_Joel McKaig_
Joel McKaig

Sworn to and subscribed before me this
_7_ day of February, 2019.

_Sara Davenport_
Notary Public
My Commission Expires: 3-4-19

10

## IN THE CHANCERY COURT FOR ANDERSON COUNTY, TENNESSEE

**IN RE: THE LIMITED CONSERVATORSHIP OF JOEL MCKAIG**

**ANTHEA HENDRIX TOUTGES**
    **Petitioner,**

v.                                  **No. 01CH1436**

**JENNIFER MCKAIG**
    **Defendant.**

### Order for Medical Evaluation

The above reference matter has been reset for a Hearing on the **25TH day of February, 2019**, at **9:00 a.m.** in the Anderson County Chancery Court, located at 100 N. Main Street, Clinton, Tennessee, 37716. Prior to that time the orders that the ward, Joel McKaig undergo a medical evaluation to determine his present need of care and whether it is Joel McKaig's best interest to continue to have unrestricted contact with his mother Anthea Hendrix Toutges, or if her continued visitation is acting as a trigger for Joel McKaig and is adversely affecting his treatment of care.

ENTER THIS THE ___*11th*___ DAY OF _Feb_, 2019.

_M. Nichole Cantrell_
**M. NICHOLE CANTRELL**
**CHANCELLOR**

FILED
HAROLD P COUSINS, JR
CLERK & MASTER
2019 FEB 11 PM 12:27

EXHIBIT C – Guardian Ad Litem's Perjured Affidavit

<u>IN THE CHANCERY COURT FOR ANDERSON COUNTY TENNESSEE</u>

IN THE MATTER OF JOEL McKAIG                    Docket No. 01CH1436

ANTHEA HENDRIX TOUTGES
      Petitioner,

v.

JENNIFER McKAIG
      Respondent.

## **MOTION FOR CONTINUANCE**

      Comes now Jennifer L. Chadwell, Guardian ad Litem for Joel McKaig, and moves this Honorable Court to continue the hearing currently set for February 25, 2019, and in support thereof would state as follows:

      1. This matter was initially before the Court on February 11, 2019 on Petition for Temporary Restraining Order filed by Jennifer McKaig, the limited Conservator for Joel McKaig. Ms. McKaig's Petition asked the Court to restrain Anthea Hendrix from having any in person contact with Joel McKaig.

      2. The Court entered a Temporary Restraining Order prohibiting Ms. Hendrix from in person contact with Joel McKaig, specifically restraining her from visiting Joel at Cedarcroft Home, the supportive living facility at which he is currently residing. The Court further Ordered a medical evaluation of Joel to determine whether the contact from Ms. Hendrix is interfering with Joel's treatment.

      3. Your Guardian has been in contact with the Administrator at Cedarcroft to obtain the information as Ordered by the Court. However, your Guardian has been informed that Joel's treating psychiatrist is out of the office until February 27, 2019 and as such, will not be available prior to this scheduled hearing to perform his evaluation and to submit his finding to the Court.

4. As such, your Guardian moves this Honorable Court to reset this hearing until after February 27, 2019 so that the Court will have the medical proof as Ordered at the last hearing.

WHEREFORE, YOUR GUARDIAN AD LITEM MOVES THIS HONORABLE COURT to continue the current hearing set for February 25, 2019 to a date after February 27, 2019.

Respectfully submitted this the 20th day of February, 2019.

JENNIFER L. CHADWELL 022723
Guardian ad litem

Law Office of Jennifer L. Chadwell, L.L.C.
P.O. Box 4038
Oak Ridge, TN 37831
Phone: (865) 685-0264
Fax: (865) 294-7100

EXHIBIT D – Evidence of GAL's fraud on the court

## Fwd: Questions to Peggy Zide of Cedarcroft Home re: Joel McKaig

From: Alex Winston (alex@winstonlawcenter.com)

To: akh129@yahoo.com

Date: Monday, March 4, 2019, 2:01 PM EST

---------- Forwarded message ---------
From: **Joshua Robbins** <jmr@jmrlawtn.com>
Date: Mon, Mar 4, 2019 at 1:57 PM
Subject: Questions to Peggy Zide of Cedarcroft Home re: Joel McKaig
To: <alex@winstonlawcenter.com>
CC: Peggy Zide <peggy@cedarcrofthome.org>, Courtney West <courtney@jmrlawtn.com>

Mr. Winston,

   This email is to inform you that this firm represents Cedarcroft Home, Inc. and Peggy Zide in her capacity as record keeper for the organization. As I'm sure you know, there is not sufficient time to subpoena Ms. Zide to appear at the hearing March 6, 2019 per the Anderson County Local Rules and the Tennessee Rules of Civil Procedure. Further, as you know, an affidavit or deposition testimony from Ms. Zide is not admissible evidence unless the Court has previously ruled on its admissibility pursuant to a proper motion to determine Ms. Zide's unavailability as a witness per the Tennessee Rules of Evidence.

   Accordingly, unless you properly issue a subpoena or can provide an order from the Court declaring Ms. Zide an unavailable witness, she will not be providing any sworn testimony by any means.

   However, in an effort to cooperate with your inquiry and satisfy your request, Ms. Zide has authorized me to disclose the following in response to your questions:

1. What date did Cedarcroft become aware of the February 11, 2019 Order for Medical Evaluation of Joel McKaig entered by the Anderson County Chancery Court? Cedarcroft became aware of the existence of the Order on February 14, 2018. I would also note that the Order does not specify who is responsible for ensuring the evaluation occurs.
2. What dates in February 2019 did Joel's psychiatrist meet with him? Cedarcroft records show Dr. Amin met with Mr. McKaig on February 13th, 2019 at his regularly scheduled visit.
3. What dates in February 2019 was Joel's psychiatrist unavailable to see him? Dr. Amin has regularly scheduled visits twice monthly at Cedarcroft to see his patients. Ms. Zide has no firsthand knowledge as to why Dr. Amin may have been "unavailable" as you allege.

I am hopeful this satisfies your inquiry, otherwise, please forward any further requests for information to my office at the address below.

- J. Michael Robbins, Attorney
JMR Law, PLLC
103 West Main St.
Lebanon, TN 37087
(615) 549-8909
Fax (615) 656-0067

# Rakesh Amin, MD

### Trustpoint Hospital 1009 N. Thompson Lane Murfreesboro, TN 37129

February 27, 2019

To Whom It May Concern,

Joel McKaig has been my patient for medication management since December 2018. Because I have known him such a brief time and only had a total of three appointments with Mr. McKaig, I rely heavily on the group home incident reports to relay behavioral information. Based on the reports I have been given, it would appear that his mother seems to be a trigger to his behavior in a negative way. It is noted that his mother has come in person to visit him three times, and out of the three visits, two of them ended poorly, with a psychiatric hospitalization necessary after the third visit. It is also reported by group home staff that he seems to get rather agitated when speaking with her on the phone and has to be reminded that yelling and cursing are not permitted in the home. She seems to agitate patient to the point where he decompensates in his mental state which every time he has a relapse it is more and more difficult for provider and staff at Cedarcroft to help alleviate symptoms.

Overall it would appear that Mr. McKaig has been adapting well in the group home and at the direction of his conservator is working hard at getting involved in the community and setting worthwhile goals.

Sincerely,

Rakesh Amin, MD

State of Tennessee, County of Wilson

Sworn to and acknowledged before me, Rakesh Amin, MD, February 27, 2019

My commission expires 4/4/2022

Notary Public

MARGARET ZIDE
STATE OF TENNESSEE
NOTARY PUBLIC
WILSON COUNTY

## IN THE CHANCERY COURT FOR ANDERSON COUNTY, TENNESSEE

JENNIFER McKAIG,

                               Petitioner,

v.                                              No.: 01CH1436

IN RE:

JOEL McKAIG,

                               Respondent/Ward.

## MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND INJUNCTION

Comes Anthea Hendrix Toutges, the Ward's mother, by and through Counsel, and moves for dissolution of the Temporary Restraining Order and Injunction against her, and would show the Court as follows:

1. The Temporary Restraining Order and Injunction ("TRO") was entered on February 11, 2019, and was extended on February 25, 2019.

2. When a Temporary Restraining Order is extended as was done on February 25, 2019, it becomes a temporary or preliminary injunction. *Smith v. Smith*, Appeal No. 01A01-9511-CH00536, 1996 Tenn. App. LEXIS 585, at *9 (Ct. App. Sep. 18, 1996).

3. To satisfy the requirements of T.R.C.P. 65.04(6), Temporary and Preliminary Injunctions require formal findings of fact and conclusions of law by a court. *Milton v. Harness*, No. E2017-00092-COA-R10-CV, 2017 Tenn. App. LEXIS 154, at *13 (Ct. App. Mar. 3, 2017) (citing *Smith v. Smith*, Appeal No. 01A01-9511-CH00536, 1996 Tenn. App. LEXIS 585, at *9 (Ct. App. Sep. 18, 1996)).

4. No testimony was heard in support of the TRO at either of the February 11, 2019 or February 25, 2019 court dates, when the TRO and its extension, respectively, were entered.

5. There has never been a hearing in which the Court has made formal findings of fact or conclusions of law regarding whether an injunction should be in place, and no such findings and conclusions appear in the TRO.

WITH THE PREMISES CONSIDERED, the Respondent's mother, Anthea Hendrix Toutges, moves for dissolution of the TRO for its failure to meet the requirements of T.R.C.P. 65.04(6).

Respectfully submitted this _5th_ day of _MARCH_ , 2019

Alexander J. Winston, BPR#033632
Attorney for Anthea Hendrix Toutges
P.O. Box 51907
Knoxville, Tennessee 37950
Phone: (865) 804-0999
Fax: (865) 321-1718
Email: alex@winstonlawcenter.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was delivered to the parties or their respective counsel by hand-delivery, electronic mail, facsimile or by U.S. Mail with sufficient postage thereon to ensure delivery.

This _5th_ day of _MARCH_ , 2019.

Alexander J. Winston

I don't like the fact that Jennifer McKaig ended my visits with my Mother. Since Jennifer has been my Conservator she has been excessively Strict and Controling. She made me so angry with all her restrictions that she put on me, it caused me to get hospitalized in a psych Ward. My Sister Jennifer blamed my mother for me being hospitalized when it was Jennifer's fault. I'm tired of having to deal with the restrictions, and not being able to visit my mother. My mother is my only family in Tennessee and I need her visits. her visits help me.

2/3/2019

Joel McKaig
Call me if you have any Questions
(615) 449-6226

⚖ WINSTON LAW CENTER
LIBERTY AND JUSTICE LIVE HERE.

Alexander Winston <alex@winstonlawcenter.com>

---

## McKaig - Keith Caruso, M.D.

**Alex Winston** <alex@winstonlawcenter.com>                    Thu, Mar 28, 2019 at 1:40 PM
To: John Routh <johnwrouth@gmail.com>, "Jennifer L. Chadwell" <jchadwell@jenniferchadwellattorney.com>,
forresterlaw <forresterlaw@comcast.net>

All:

The proposed doctor to perform an independent evaluation of Joel is Dr. Keith Caruso. His CV is attached. His phone number is (615) 844-6148. I have given him your names and Joel's name, and he is expecting your calls. Please call him and make sure you are comfortable with him. Then let me know whether you agree to use him. Please do so quickly because we are short on time, and while he says he can get a report done before our 4/17 date, we may have to push the date back if we wait too much longer before giving him the green light.

Alex Winston
Attorney at Law
(865) 804-0999
P.O. Box 51907
Knoxville, TN 37950

---

## McKaig

**Chrissy Forrester** <forresterlaw@comcast.net>                    Thu, Apr 4, 2019 at 12:26 PM
To: "Jennifer L. Chadwell" <jchadwell@jenniferchadwellattorney.com>, Alex Winston
<alex@winstonlawcenter.com>
Cc: John Routh <johnwrouth@gmail.com>

Daniel is fine with using Dr. Caruso

Chrissy Forrester
Assistant to H. Daniel Forrester, III
711 S. Charles G Seivers Blvd
P.O. Box 398
Clinton, TN 37717
(865) 457-7900 (Telephone)
(865) 463-6090 (Facsimile)

## McKaig

**Alex Winston** <alex@winstonlawcenter.com>          Thu, Apr 4, 2019 at 12:09 PM
To: "Jennifer L. Chadwell" <jchadwell@jenniferchadwellattorney.com>
Cc: John Routh <johnwrouth@gmail.com>, forresterlaw@comcast.net

I think we're off tomorrow. I never sent in a notice of hearing on it anyway, but I will call the court to advise them to take it off their calendar.

Please let me know about Dr. Caruso ASAP. Please see my prior email for his CV and contact info. It's been almost a week since the Chancellor asked us about it, and we have less than two weeks before the hearing. Thank you.

Alex

[Quoted text hidden]

--

Alex Winston
Attorney at Law
(865) 804-0999
P.O. Box 51907
Knoxville, TN 37950

## McKaig

**Jennifer L. Chadwell** <jchadwell@jenniferchadwellattorney.com>          Thu, Apr 4, 2019 at 12:23 PM
To: Alex Winston <alex@winstonlawcenter.com>
Cc: John Routh <johnwrouth@gmail.com>, forresterlaw@comcast.net

I am deferring to the opinion of Mr. Routh and Mr. Forrester regarding whether they are in agreement with Dr. Caruso.

Jennifer

Jennifer L. Chadwell
Law Office of Jennifer L. Chadwell, LLC
P.O. Box 4038
Oak Ridge, TN 37831
Phone: (865) 685-0264
Fax: (865) 294-7100

## McKaig

**John Routh** <johnwrouth@gmail.com>          Thu, Apr 4, 2019 at 3:07 PM
To: Alex Winston <alex@winstonlawcenter.com>, "Jennifer L. Chadwell" <jchadwell@jenniferchadwellattorney.com>, forresterlaw <forresterlaw@comcast.net>, Jennifer McKaig <jenmckaig@gmail.com>

We will not be getting a second opinion. My client still doubts the use of it, but go head with your choice

EXHIBIT I – Email Evidence That Jennifer McKaig Violated March 28, 2019 Bench Order

## Re: Request documentation

From: Keith Caruso, M.D. (kcarusomd@aol.com)

To: akh129@yahoo.com

Date: Monday, August 26, 2019, 05:43 PM EDT

I believe that I actually spoke to her on the phone when she told me that. She said words to the effect that she was challenging my appointment to do the IME and expressed that she was seeking her own expert to do an IME.

> -----Original Message-----
> From: Southern Fried <akh129@yahoo.com>
> To: M.D. Keith Caruso <kcarusomd@aol.com>
> Sent: Mon, Aug 26, 2019 4:11 pm
> Subject: Request documentation
>
> Dr. Caruso,
>
> When you were first hired to perform the IME, you were restrained from meeting with my son Joel McKaig. Mr. Winston (former counsel) stated that my daughter would not allow you to interview Joel. Did she leave a voice mail stating that you could not interview him? That's what Mr. Winston thought happened, but I need documentation of that since she violated two Court orders for an IME on February 11 and March 28 and then filed a motion for a new IME on July 8 after violating those Orders. I am appealing the restraining order on the grounds that it has been kept in effect and even expanded to a no-contact order before the IME reports were available.
>
> I'm sorry to bother you and promise not to be a pest, but I need documentation for legal purposes.
>
> Thank you.
>
> Anthea Hendrix

## IN THE CHANCERY COURT FOR ANDERSON COUNTY, TENNESSEE

| | |
|---|---|
| **ANTHEA HENDRIX TOUTEGES,** )<br>     Petitioner, )<br> )<br> v. )<br> )<br> )<br> **JENNIFER McKAIG,** )<br>     Respondent. ) | **No. 01CH1436** |

IN RE:     <u>THE LIMITED CONSERVATORSHIP OF JOEL McKAIG</u>

### AFFIDAVIT OF DR. RAKESH AMIN

**COMES NOW**, Dr. Rakesh Amin, and being duly sworn does hereby state unto this Honorable Court as follows, to wit:

1.     I am a medical doctor licensed to practice medicine in the State of Tennessee and am over the age of eighteen and competent to make this Affidavit. A copy of my CV is attached hereto as Exhibit "A."

2.     I treated Joel McKaig from December of 2018 through May of 2019 at CedarCroft.

3.     During the time that I treated Mr. McKaig, I observed, witnessed and/or personally aware of numerous incidents wherein the Petitioner's/Ms. Touteges', contacting and/or visiting Mr. McKaig, either in person and/or by phone, would cause Mr. McKaig to become delusional, anxious, extremely agitated and/or not his normal,

1

stable self. In fact, one such episode led to Mr. McKaig having to be hospitalized in a psychiatric hospital. These changes in Mr. McKaig's demeanor and/or actions would occur consistently and regularly whenever he was contacted by and/or had any unsupervised time with the Petitioner, Ms. Touteges.

4. Given the dramatic, negative and concerning changes in Mr. McKaig's demeanor, mental state and/or personality after any contact with Mrs. Touteges, I submitted an Affidavit to the Court documenting the concerning effects of Mrs. Touteges' visits with and/or telephone conversations on Mr. McKaig. See Exhibit "B."

5. That, after Mrs. Touteges became aware that myself and Peggy Zide at CedarCroft were willing to advise the Court as to our concerns/sign Affidavits documenting our concerns/her negative impact upon Mr. McKaig, she began to contact both myself and Peggy and threaten us, attempt to intimidate us and/or harass us. Specifically, Mrs. Touteges has, among other things, threatened to report me to the medical board and/or file a malpractice suit against me if I did not rescind my sworn statement to this Honorable Court. See the emails from Mrs. Touteges to myself which are attached hereto as Exhibit "C." That, it was only after I involved our staff attorneys that Mrs. Touteges stopped contacting our facility and/or sending threatening emails/making threatening calls.

6. That it is my medical opinion, within a reasonable degree of medical certainty, from the multiple episodes that I observed and/or are personally aware of, wherein, Mr. McKaig's demeanor, personality and/or mental state would dramatically

2

23

decline/deteriorate and/or become medically unstable after any contact with Mrs. Touteges, that it is medical detrimental for Ms. Touteges to have any contact with Mr. McKaig while he is undergoing treatment. Further, it is my medical opinion within a reasonable degree of medical certainty, that Mrs. Touteges' contact with Mr. McKaig significantly impacts his medical providers' ability to provide effective treatment and/or care for him in the days and/or weeks following her contact with him and/or causes Mr. McKaig to experience significant medical setbacks.

7.     That, based upon my observations of Mrs. Touteges' negative impact on Mr. McKaig's mental state/treatment, I would not recommend any contact between Mrs. Touteges and Mr. McKaig while Mr. Mckaig is in treatment.

8.     That, given Mrs. Touteges' prior actions in threatening my career, etc., if I spoke to the Court/submitted my medical opinions in this case, I am concerned that Mrs. Touteges will attempt to take negative/harmful actions against myself and/or other members of the CedarCroft staff and/or against my current employer and/or our staff. As such, I would respectfully request that, in entering any Restraining Order in this case, that this Honorable Court also restrain/prohibit Mrs. Touteges from taking any retaliatory action against myself and/or any other medical personnel and/or staff for issuing opinions/recommendations to the Court and/or from harassing, threatening and/or attempting to intimidate and/or from coming about myself and/or any other medical personnel and/or staff that are or have treated Mr. McKaig.

3

9. That all of my statements, observations, findings and/or observations in this Affidavit are within a reasonable degree of medical certainty.

_____
**DR. RAKESH AMIN**

Sworn to and subscribed before me this 12th day of _____July_____, 2019.

_____
Notary Public

My Commission Expires: _3.3.21_

## IN THE CHANCERY COURT FOR ANDERSON COUNTY, TENNESSEE

JENNIFER McKAIG,

                    Petitioner,

v.

IN RE:

JOEL McKAIG,

                    Respondent/Ward.

No.: 01CH1436

---

## MOTION TO DISMISS TEMPORARY RESTRAINING ORDER AND RESPONSE TO MOTION FOR MODIFICATION AND EXPANSION OF RESTRAINING ORDER AND FOR FINDING OF CONTEMPT OF COURT

**COMES NOW**, the mother of the Ward Joel McKaig ("Joel"), Petitioner Anthea Hendrix Toutges ("Annie"), by and through Counsel, and moves for dissolution of the Temporary Restraining Order and Injunction against her, and for denial of Jennifer McKaig's ("Jennifer") Motion for Modification and Expansion of Restraining Order and for Finding of Contempt of Court (the "Motion"):

1. In response to the statements in Paragraph 1 of the Motion, it is admitted that on May 25, 2018, this Honorable Court entered an Interim Order and that the quoted language from that Order, i.e., "take no action on behalf of the Ward," is accurately recited. However, the Order did not specifically enumerate the rights taken from Joel and transferred to Jennifer. T.C.A. § 33-3-107(a)(2) requires that all orders for conservatorship "[e]numerate the powers removed from the respondent and those to be vested in the conservator. To the extent not specifically removed, the respondent shall retain and shall exercise all of the powers of a person without a disability." At most, the rights that could conceivably have been transferred to Jennifer are:

   a) The right to accept or refuse medical and mental health examinations; and

   b) The right to accept or refuse medical and health treatment; and

c)  The right to accept or refuse medical and mental health hospitalization; and

d)  The right to refuse surgery; and

e)  The right to consent to placement in a group home, nursing home, or alternative living arrangement.

Annie did not violate these rights of Jennifer as a Limited Medical Conservator. Annie's actions are those of a mother whose son adamantly and persistently begs her to visit him, which, despite Joel's objections, this Court has prohibited. Additionally, Jennifer has encouraged and instructed Annie to take actions on behalf of Joel since the Order was entered.

2.  In response to Paragraph 2 of the Motion, see Paragraph 1 above. The quoted language in Paragraph 2 of the Motion is not actually in the court's Order. The Order never states that Annie shall "take no action on the behalf of the Ward after May 21, 2018, at penalty of contempt." *See* Motion at Paragraph 2 (misquoting the Agreed Final Judgment). Rather, the Order mentions contempt as a penalty only if Annie attempts to act in her capacity as Conservator, which is much narrower than any action whatsoever on Joel's behalf. While the Order states that Annie may take no action on Joel's behalf, Annie's actions did not violate Jennifer's rights as a Limited Medical Conservator pursuant to T.C.A. 33-3-107. The Order was entered by this Court as a Limited Medical Conservatorship and must therefore be limited to the above referenced scope at the very most. Contrary to recent assertions of the Court, Jennifer's attorney, the guardian ad litem, and most concerning, the attorney ad litem whose statutory duty is to zealously resist full conservatorship on Joel's behalf regardless of said attorney's own opinions of Joel's capacity. Joel has mental capacity and maintains his rights to drive, vote, enter into contracts, give sworn testimony, attend

2

hearings, sign affidavits, transfer property, and all other rights. His legal rights have consistently been denied by this Court despite the attorney ad litem's assertion that Joel does not need or want this TRO. Joel has repeatedly asked to be present at hearings and that right has been denied as well.

3. The allegation in Paragraph 3 of the Motion is admitted.

4. The Exhibit referenced in Paragraph 4 of the Motion is correct, but the doctors' letters are misconstrued. On February 11, 2019, this Court entered an Order for Medical Evaluation requiring that "Joel McKaig undergo a medical evaluation to determine his present need of care and whether it is in Joel McKaig's best interest to continue to have unrestricted contact with his mother Anthea Hendrix Toutges[.]" According to the doctors' own letters, no such evaluation was performed. The letter from Dr. Christina Jones made no reference to contact between Joel and his mother whatsoever, and appears completely unresponsive to the Court's Order for Medical Evaluation. The letter of Dr. Rakesh Amin states that he is relying on notes and reports of "group home staff," and it appears he performed no medical evaluation as ordered on February 11, 2019. No doctor has ever given this Court any opinion as to whether it is in Joel McKaig's best interest to continue to have unrestricted contact with his mother, so the proponent of the TRO has still not complied with this Court's February 11, 2019 Order. There has never been a hearing in which the Court made formal findings of fact or conclusions of law regarding whether an injunction should be in place, and no such findings and conclusions appear in the TRO. No testimony was heard in support of the TRO at either of the February 11, 2019 or February 25, 2019 court dates, when the TRO and its extension, respectively, were entered. When a temporary restraining order is extended as was done on February 25, 2019, it becomes a temporary or preliminary

3

injunction. *Smith v. Smith*, Appeal No. 01A01-9511-CH00536, 1996 Tenn. App. LEXIS 585, at *9 (Ct. App. Sep. 18, 1996). To satisfy the requirements of T.R.C.P. 65.04(6), temporary and preliminary injunctions require formal findings of fact and conclusions of law by a court. *Milton v. Harness*, No. E2017-00092-COA-R10-CV, 2017 Tenn. App. LEXIS 154, at *13 (Ct. App. Mar. 3, 2017) (citing *Smith v. Smith*, Appeal No. 01A01-9511-CH00536, 1996 Tenn. App. LEXIS 585, at *9 (Ct. App. Sep. 18, 1996)). Because no such formal findings of fact and conclusions of law were made, the extension of the TRO was of no effect, and in the absence of such findings and conclusions the TRO became legally unenforceable after February 25, 2019, when the Court transformed it into an injunction without recording any formal findings of fact or conclusions of law. The lack of formal findings and conclusions requires immediate dissolution of the TRO.

5. Paragraph 5 of the Motion is largely moot because the court resolved the IME dispute on July 8, 2019. The emails attached as an Exhibit to the Motion and referenced in Paragraph 5 are the words of a loving and protective mother whose son repeatedly calls her and begs her to visit him, but who is restrained from doing so.

6. Paragraph 6 of the Motion was resolved on July 8, 2019.

7. The allegations in Paragraph 7 of the Motion are denied. Joel has grown increasingly frustrated and unhappy about the TRO that has kept him from seeing his mother since February 2019 after already being deprived of contact with his mother during the two months he spent at the Parthenon Pavilion Hospital from mid-October to Christmas 2018 simply because Jennifer had personal issues with her mother. Joel misses his mother and calls her several times a day, begging her to visit him in violation of the order. Joel has also told him mother he wants to run away and hitchhike to her home, which Annie has

4

discouraged. Annie always encourages Joel to reach out to his attorney for help. Joel told Annie he attempted repeatedly over a two-week period to reach his attorney and left messages asking for help putting together a motion or affidavit so that he can resist the TRO and full conservatorship, but he never received a response. Only then, after continued begging from her sick son and a lack of response from his attorney, did Annie agree to help Joel prepare what his attorney would not. Joel told Annie what he wanted to say in his Affidavit and approved the language and contents before printing the Affidavit himself. Joel was so adamant about wanting to be heard by this Court that he walked a mile to the public library to print the Affidavit, then walked another mile to the local justice center to have it notarized, and then walked back to the library to have the notarized Affidavit scanned to his email. He then forwarded the Affidavit to Annie and his attorney. He asked Annie to name the Affidavit for him and send it back to him so he could forward his Affidavit to all parties. All of this was done after Joel begged Annie repeatedly to help him be heard because his attorney was not responding. And again, Joel still has the legal right to give sworn testimony and sign affidavits, and his attorney has a statutory and ethical duty to zealously advocate for Joel's position and resist full conservatorship, regardless of said attorney's personal opinions about Joel's best interest.

8. The allegation in Paragraph 8 of the Motion is denied. On July 8, 2019, after filing the Motion, Jennifer's attorney was permitted to see Annie's actual email in her sent messages on her live, physical smartphone, with the exact same date and time stamp indicated on the Exhibit in the Motion, which proved Annie did not write the paragraph that appears in the email contained in Exhibit D of the Motion. Joel wrote that paragraph himself and forwarded the email to counsel, but he accidentally typed his paragraph below the

5

"forwarded message" block. Again, that has been proven to the Movant's counsel and the Court can review the sent message on Annie's phone if it wishes. If Joel is permitted to exercise his statutory right to attend hearings on this matter, he will testify to the same. Annie has offered to pay for Joel's transportation to any hearing, and Joel claims that he has asked his lawyer to arrange it, but he has not yet attended a hearing since this litigation was re-opened.

9. The allegations in Paragraph 9 of the Motion are denied. Annie did not violate Jennifer's rights as a Limited Medical Conservator or the TRO, which has yet to be substantiated by formal medical evidence, and which became unenforceable on February 25, 2019, when it was converted to an injunction without formal findings of fact and conclusions of law. Joel has stated and wrote to the Court in his own handwriting (See Exhibit 1) that Annie did not agitate him or cause setbacks in his treatment, and Jennifer upset him by constantly giving him new restrictions over those imposed by the group home.

10. With respect to the allegations in Paragraph 10 of the Motion, the attorney ad litem informed undersigned counsel on July 8, 2019 that Joel has been going back and forth about his wishes, and that his most recent position is that he is not happy with his sister as stated in the Motion. Joel has consistently told his attorney ad litem he wants the TRO removed. This is not about the conservatorship, but the TRO. The IME reports should provide formal guidance to the Court regarding who should be Joel's conservator.

11. The allegations in Paragraph 11 of the Motion are denied. Annie did not write out legal narratives for Joel. He is perfectly capable of expressing himself orally and in writing as he demonstrated in his email to the attorneys, and in handwritten letters to the court. As has already been proved to Movant's counsel, Joel wrote the email that she believed Annie

6

wrote for him. Joel has begged Annie to help his voice be heard by the Court concerning the cruelty of the TRO, and Annie assisted him by typing his instructions onto an Affidavit after he tried repeatedly to get his attorney to help him. The TRO is causing Joel distress to the point that he is threatening to run away and hitchhike to Annie home. Joel has his attorney to arrange for him to appear at these proceedings to express his needs and wishes to the Court, but his requests were ignored. Joel is being treated as if the Court has already granted full conservatorship and taken away all of his rights. His statutory rights and procedural requirements are being ignored. Joel submitted two affidavits to the Court and both were dismissed without consideration as the words of someone who has no capacity, despite the fact that he has not been deemed incapacitated. His testimony was given heavy consideration in the conservatorship hearings when his testimony helped remove Annie as conservator, and nothing has changed since then in his mental capacity. Nonetheless, Joel has been treated with complete disregard as though he is too incapacitated to weigh in on his right to live his life or his right to see his own mother.

12. The allegations in Paragraph 12 of the Motion are denied. It is obviously not a violation of a court order for Annie to try to enforce Jennifer's written agreement to use Dr. Caruso for the IME. The Court instructed the parties to either agree on a doctor or submit three names each. All agreed on Dr. Caruso. If anyone violated the court-ordered instructions, it was Jennifer, who first agreed to use Dr. Caruso, then breached that agreement five weeks later, then ignored the Court's directive to submit three names if no agreement could be reached, instead opting to file another Motion for IME.

13. The requested relief in Paragraph 13 of the Motion should not be granted because Annie's actions do not warrant penalties.

7

**PREMISES CONSIDERED**, Annie moves for dissolution of the TRO for failure to meet the requirements of T.R.C.P. 65.04(6) and that Jennifer's motion be denied on the grounds that the TRO, even if enforceable, was not violated, and that the vaguely written Order appointing Jennifer conservator failed to meet the legal requirements necessary to charge Annie with contempt. Annie further requests that all Court and legal fees for the TRO and this action be charged to Jennifer for failure to comply with the Court's February 11, 2019 Order for Medical Evaluation, which evaluation remains unperformed. Annie's actions are those of a loving mother whose son begged her over and over to do *something* to help him after his repeated attempts to have his attorney help him failed. Such actions do not warrant contempt penalties.

Respectfully submitted this _12_ day of _July_, 2019

Alexander J. Winston, BPR#033632
Attorney for Anthea Hendrix Toutges
P.O. Box 51907
Knoxville, Tennessee 37950
Phone: (865) 804-0999
Fax: (865) 321-1718
Email: alex@winstonlawcenter.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was delivered to the parties or their respective counsel by hand-delivery, electronic mail, facsimile or by U.S. Mail with sufficient postage thereon to ensure delivery.

This _12ᵗ_ day of _July_, 2019.

Alexander J. Winston

33

EXHIBIT L – July 15, 2019 No-Contact Restraining Order

## IN THE CHANCERY COURT FOR ANDERSON COUNTY, TENNESSEE

| | |
|---|---|
| ANTHEA HENDRIX TOUTGES,<br>    Petitioner, | )<br>)<br>) |
| v. | )       No. 01CH1436<br>)(NOTICE OF ENTRY REQUESTED)<br>) |
| JENNIFER McKAIG,<br>    Respondent. | )<br>)<br>) |

**FILED**

AUG 19 2019

3:? O'CLOCK

HAROLD P. COUSINS, J

Clerk & Master

IN RE:      THE LIMITED CONSERVATORSHIP OF JOEL McKAIG

### ORDER & RESTRAINING ORDER

**THIS CAUSE,** came to be heard on the 15th day of July, 2019, upon the Respondent's, Jennifer's McKaig's, (hereinafter the "Respondent" and/or "Ms. McKaig"), Motion for Modification and/or Expansion of Restraining Order and for Contempt of Court and upon the Petitioner's, Anthea Hendrix Toutges', (hereinafter the "Petitioner" and/or "Ms. Hendrix Toutges"), Motion to Dismiss Restraining Order and Response to Motion for Modification and Expansion of Restraining Order and for Contempt of Court, the Court, after hearing the arguments of counsel for the Parties, the *Guardian Ad Litem* for the Ward and the *Attorney Ad Litem* for the Ward and the testimony of the Petitioner, Anthea Hendrix Toutges, and having reviewed the Affidavit of one of the Ward's, Joel's McKaig's, treating physicians, Dr. Rakesh Amin, along with various other exhibits introduced during the testimony of the Petitioner/Ms. Hendrix Toutges and, upon review

RECEIVED

AUG - 6 2019

1

of the file as a whole, does hereby find and it is therefore **ORDERED, ADJUDGED** and **DECREED** as follows:

1. That this Honorable Court finds and holds that the Petitioner's/Ms. Hendrix Toutges' assertion/averment that this Honorable Court cannot hold a hearing on the Respondent's/Ms. McKaig's Motion to Modify and/or Expand the Restraining Order, already entered against Ms. Hendrix Toutges personally in this cause, without the Ward, Mr. McKaig, present and/or that the Court has previously acted improperly by entering a Restraining Order against Ms. Hendrix Toutges, without the Ward present, to be without merit. Pursuant to T.C.A. § 34-1-121(a):

> The court has broad discretion to require additional actions not specified in this chapter, and chapters 2 and 3 of this title as the court deems in the best interests of the minor or disabled person and the minor's or disabled person's person and/or property. The court also has discretion to waive requirements specified in this chapter, and chapters 2 and 3 of this title if the court finds it is in the best interests of the minor or disabled person to waive such requirements, particularly in those instances where strict compliance would be too costly or place an undue burden on the fiduciary or the minor or the disabled person.

T.C.A. § 34-1-121(a).

The Court finds that the Ward's *Attorney Ad Litem* has advised the Court that he has spoken to his client, the Ward, regarding this hearing and the issues

2

giving rise to and to be adjudicated during the same and that the Ward has advised him that he does not feel that he needs to be present for this hearing and is not objecting to the same preceding without his being present. Further, the *Guardian Ad Litem* has advised the Court that it is not in the Ward's best interests to be present at this hearing, given the Ward's physician's and the Director's of the home where the Ward is currently residing, sworn statements, as contained in the uncontested/un-objected to Affidavits entered into evidence with this Honorable Court, which clearly and unambiguously state that contact with the Petitioner/Ms. Hendrix Toutges causes the Ward to become unstable, extremely upset and has, on at least one occasion, lead to the Ward being admitted to a psychiatric hospital.

Further, the Court finds that the subject matter of this hearing pertains to whether the Petitioner/Ms. Hendrix Toutges has acted in such a manner as to make her continued contact with the Ward dangerous and/or destabilizing to the Ward and/or in a manner that is designed to and/or intended to and/or is likely to interfere with the Conservator's/Ms. McKaig's ability to effectively perform her role as the Ward's medical conservator and/or the Court's appointed counsels' ability to carry out their court-appointed roles and/or to effectively represent the Ward in this case and/or the Court's ability to hear and adjudicate this case without the Petitioner/Ms. Hendrix Toutges improperly attempting to influence and/or intimidate the Ward and/or other witnesses in this case. As

3

such, this proceeding specifically addresses whether the Court will restrain Ms. Hendrix Toutges personally, as opposed to, whether the Court will take any action pertaining to the Ward.

Given the above, this Honorable Court finds and holds that the Ward has advised his *Attorney Ad Litem* that he does not object to this hearing taking place without his being present and, as such, the Ward is not asserting his right to be present at this hearing. Further, the Court finds and holds that it would not be in the best interests of the Ward and would, in fact, unduly burden the Ward emotionally and/or psychologically to appear for this hearing, per the sworn testimony of multiple witnesses, including one of the Ward's treating physicians and the statements of the Ward's *Guardian Ad Litem.*

2.    That this Honorable Court finds and holds that the Petitioner's/Ms. Hendrix Toutges' assertion/averment that this Honorable Court has improperly entered and/or extended the Restraining Order in this case is without merit. Specifically, pursuant to Rule 65.03 of the Tennessee Rules of Civil Procedure:

> A Restraining Order may be granted at the commencement of an action
> or during the pendency thereof without notice if it clearly shown by
> verified Complaint or Affidavit that the applicant's rights are being
> violated or will be violated by the adverse party and the applicant will
> suffer immediate and irreparable injury, loss or damage before notice

can be served and/or a hearing had... ... *[and may be extended by the*

*Court] for good cause shown.*

Rule 65.03 of the Tennessee Rules of Civil Procedure (emphasis added).

This Honorable Court entered an *Ex Parte* Restraining Order on February 11, 2018 based upon the sworn allegations in the Respondent's/Ms. McKaig's Motion for a Restraining Order which were sufficiently clear and persuasive for this Honorable Court to find that the Conservator's/Ms. McKaig's right to protect the Ward's medical well-being/act in/provide for the Ward's medical best interests, per her status as conservator for the Ward, were likely being violated by the Petitioner/Ms. Hendrix Toutges and that the Conservator and/or the Ward under her care were likely to suffer immediate and irreparable harm if an *Ex Parte* Restraining Order was not entered.

In conjunction with the issuance of the Restraining Order, on February 11, 2019, this Honorable Court also entered an Order requiring that the Ward undergo a medical evaluation to determine his present need of care and whether it was in his best interest to continue to have unrestricted contact with the Petitioner/Ms. Hendrix Toutges, prior to the Court holding a final hearing on the same, so as, to best protect the interests/well-being of the Ward. The Court also appointed an *Attorney Ad Litem* for the Ward.

The next hearing on the Restraining Order was set for February 25, 2019. At the February 25, 2019 hearing, the *Guardian Ad Litem* for the Ward requested a continuance as more time was needed to obtain the medical proof ordered by the Court. The Court granted the continuance, so as, to allow the *Guardian Ad Litem* to obtain necessary medical

5

proof, as permitted under Rule 65.03 of the Tennessee Rules of Civil Procedure which allows a Court to extend a Restraining Order for good cause shown. The hearing was continued to March 6, 2019.

At the next hearing on March 6, 2019, this Honorable Court was presented with three, sworn, uncontested and un-objected to Affidavits from the Ward's treating physicians and the director of the residential home, at which, the Ward was residing, from all of which, it was clear that the Ward's treating physicians and the director of the home where the Ward were residing believed that the Petitioner's/Ms. Hendix Toutges' contact with the Ward was and/or was likely to be causing the Ward significant emotional and/or psychological issues, to the point that the Ward had to be hospitalized after one of the Petitioner's/Ms. Hendrix Toutges' visits with him. The Court also heard testimony from the Petitioner/Ms. Hendrix Toutges. Following the hearing, the Court denied the Petitioner's/Ms. Hendrix Toutges' objection to the continuance of the Restraining Order, as the Parties were still developing medical proof related to the same/the risk to the Ward had not been disproven and/or resolved/for good cause shown, and set the final hearing for April 17, 2019. Following the March 6, 2019, hearing the Petitioner/Ms. Hendrix/Toutges requested the right to obtain an IME prior to attempting to challenge the Restraining Order, which the Court granted requested. To date, that IME has not been completed.

That, as set forth above, the Restraining Order in this case has been entered and/or extended in-line with the requirements of Rule 65.03 of the Tennessee Rules of Civil

6

Procedure and, as such, the Petitioner's/Ms. Hendrix Toutges' Motion to Dismiss the Restraining Order is without merit.

3.     That, after having heard the testimony of the Petitioner/Ms. Hendrix Toutges, on the date of this hearing, wherein she repeatedly misstated court orders and/or refused to abide by the exact terms of this Honorable Court's orders, which are designed/intended to protect the Ward, and after reviewing the  numerous exhibits entered into evidence during the hearing on this matter, including the undisputed/un-objected to Affidavit of one of the Ward's treating physicians, Dr. Rakesh Amin, wherein he states that it is his opinion, within a reasonable degree of medical certainty, that it is not in the Ward's medical best interests to have any contact, whatsoever, with the Petitioner/Mrs. Hendrix Toutges while the Ward is in treatment and further that it is his opinion, within a reasonable degree of medical certainty, that the Ward's demeanor, personality and/or mental state dramatically declines/deteriorates and that the Ward became medically unstable after contact with Mrs. Hendrix Touteges and that Ms. Hendrix Touteges' having any contact with the Ward significantly impacts his medical providers' ability to provide effective treatment and/or care for him for  days and/or weeks following her contact with the Ward and has caused the Ward to  experience significant medical setbacks, and after hearing the statement of the *Guardian Ad Litem* that she does not believe that it is in her client's best interests to have contact with the Petitioner/Ms. Hendrix Toutges, while this case is pending, and that the Petitioner's/Ms. Hendrix Toutges' actions are interfering with her ability to represent her client and the *Attorney Ad Litem's* statement

7

that the Petitioner/Ms. Hendrix Toutges is actively interfering with his representation of his client/his ability to represent his client by discussing legal matters with the Ward and/or drafting legal documents for the Ward (both of which the Petitioner/Ms. Hendrix Toutges admitted have occurred during her testimony before this Honorable Court) despite this Honorable Court's repeat admonishments to the Petitioner/Ms. Hendrix Toutges that she is legally prohibited from doing so, this Honorable Court does hereby find and hold that the above-stated facts evidence that there is a substantial and imminent risk of irreprable harm to the Ward's emotionally and/or psychological well-being and to the conservator's ability to effectively manage the Ward's medical care, as well as, to Ward's court-appointed attorneys' ability to effectively represent him in this case and to this Honorable Court's ability to fairly and effectively adjudicate this case, should the Petitioner/Ms. Hendrix Toutges be permitted any contact with the Ward while this case is pending. This is especially the case, as this Honorable Court has given the Petitioner/Ms. Hendrix Toutges multiple warnings/chances to cease the behaviors that now lead to the continuation, modification and enlargement of the Restraining Order against her, all of which, the Petitioner/Ms. Hendrix Toutges has not heeded.

As such, it hereby ordered that the Restraining Order previously entered against the Petitioner/Ms. Hendrix Toutges shall remain in place and shall be modified and enlarged to prohibit any and all contact between the Petitioner/Ms. Hendrix Toutges and the Ward of any nature, whatsoever. Ms. Hendrix Toutges is hereby ordered not to contact the Ward, personally and/or through any agent. The Petitioner/Ms. Hendrix Toutges is

8

further ordered not to respond to any attempts by the Ward to contact her, either personally and/or through any agent. Further, the Petitioner/Ms. Hendrix Toutges is hereby ordered not to go about the Ward and/or any home and/or treatment facility and/or medical facility in which the Ward is residing and/or being treated and/or evaluated and/or any other location where she knows the Ward is and/or could be at any time and/or for any reason. The Petitioner/Ms. Hendrix Toutges is also hereby ordered not to discuss any legal matters and/or any other matter with the Ward and/or to prepare any legal documents, etc., for the Ward either personally and/or through any agent while this case is pending, as the Ward is represented by legal counsel and as there is evidence before the Court that the Petitioner/Ms. Hendrix Toutges may be attempting to improperly influence the Ward, in regards to, this case.

4.      That, after hearing the testimony of the Petitioner/Ms. Hendrix Toutges, wherein she repeatedly misstated court orders and/or refused to abide by the express terms of court orders designed to protect the Ward and after reviewing the numerous exhibits entered into evidence during the hearing on this matter, including the Affidavit of one of the Ward's treating physicians, Dr. Rakesh Amin, wherein he states that the Petitioner/Ms. Hendrix Toutges has threatened him, if he did not change his sworn statements, as submitted to this Honorable Court, and has taken multiple negative actions against him due to his sworn statements to this Honorable Court in what this Court finds to be an apparent attempt to coerce Dr. Amin to change his sworn statements to this Honorable Court and/or in retaliation for his sworn statements to this Honorable Court,

9

this Honorable Court further orders that the Petitioner/Ms. Hendrix Toutges is hereby restrained from taking any retaliatory action against Dr. Amin and/or any other medical personnel and/or treatment facility/residential home personnel and/or staff for issuing opinions/recommendations to the Court and/or for submitting sworn statements and/or testimony to this Honorable Court. The Petitioner/Ms. Hendrix Toutges is further ordered not to harass, threaten and/or attempt to intimidate any of the above-stated individuals and is restrained from coming about any of the above-stated individuals and/or any location that the Petitioner/Ms. Hendrix Toutges knows or should know that the Ward and/or any of the Ward's treating physicians and/or staff are and/or may be and/or from coming about and/or contacting any other of the Ward's treating and/or evaluating physicians and/or medical personnel and/or staff and/or residential home staff, except as the IME physicians in this case request/desire.

5.    That, as both Parties are in the process of obtaining IMEs, the trial in this matter which was previously set for August 27, 2019, is hereby removed from this Honorable Court's docket. Upon completion of the respective IMEs, the Parties will select a mutually agreeable trial date and/or request a trial date from this Honorable Court, after which, a new Scheduling Order shall be entered.

6.    All other matters are reserved for further hearing.

ENTERED and ORDERED this _____19th_____ day of ____August____, 2019, NUNC PRO TUNC, July 15, 2019.

_M. Nichole Cantrell_
HONORABLE M. NICHOLE CANTRELL
10

APPROVED FOR ENTRY:
PETERSON WHITE LAW FIRM

_____
Jodi B. Loden, BPR# 026440
6330 Baum Drive
Knoxville, TN 37919
(865) 909-7320


WINSTON LAW CENTER


_____
Alexander J. Winston, BPR# 033632
9215 Middlebrook Pike, Suite 650
Knoxville, TN 37931
(865) 804-0999


THE LAW OFFICE OF JENNIFER L. CHADWELL

_____
Jennifer Chadwell, BPR # 022723 w/ exp perm
240 West Tennessee Avenue
Oak Ridge, TN 37830
(865) 685-0264


FORRESTER, BURRELL & VARSALONA

_____
H. Daniel Forrester, BPR # 024428 w/ exp perm JR
711 S. Charles G. Seivers Blvd.
Clinton, TN 37716
(865) 685-5642

11

## IN THE CHANCERY COURT FOR ANDERSON COUNTY, TENNESSEE

| | |
|---|---|
| **ANTHEA HENDRIX TOUTGES,**<br>    **Petitioner,**<br><br>v.<br><br><br>**JENNIFER McKAIG,**<br>    **Respondent.** | )<br>)<br>)<br>)<br>)     No. 01CH1436<br>)<br>)<br>)<br>) |

IN RE:      THE LIMITED CONSERVATORSHIP OF JOEL McKAIG

### MOTION TO STRIKE AND/OR TO EXCLUDE AND TO PRECLUDE AT TRIAL

**COMES NOW**, the Respondent/Counter-Petitioner, Jennifer McKaig, by and through her attorney of record, Jodi B. Loden of Peterson White Law Firm, and, pursuant to Tenn. R. Civ. P., Rule 12.06, does hereby move this Honorable Court for an Order either striking the Petitioner's/Counter-Respondent's, Motion to Stay or Dismiss and Accompanying Independent Medical   and Diagnostic Psychological Report   and Physicians' statement/records and all exhibits thereto in their entirety and/or striking the averments and correlating  exhibits, set forth and/or referenced in Paragraphs: Paragraph 7, a Certified Witness Affidavit from Elisa Katschka along with Ms. Katschka's Affidavit; Paragraph 8 in reference to and/or all emails, etc., that are between people who will not be witnesses at the hearing/cannot be cross-examined;  all police reports, etc., which have been improperly attached to the pleading and/or all references to and/or information from and/or the report of Dr. Ryan Boddy and/or any medical records and/or statements and/or reports by Dr. Ryan Boddy and/or Dr. Mark Rice as the same are hearsay and as the providers cannot be cross-examined as to the contents of the same and any and all

references, information and/or documents related to any of the above materials in any filings on record with this Honorable Court and to preclude any evidence or testimony related to the same unless properly produced through trial testimony of the experts or witnesses and/or by deposition through a properly and timely scheduled deposition in terms of expert witnesses and in support of the same would show unto this Honorable Court as follows:

## I. MOTION TO DISMISS OR TO STRIKE THE COMPLAINT IN ITS ENTIRETY

That, on or about April 27, 2020, the Petitioner/Counter-Respondent, Anthea

Hendrix Toutges, filed a Motion to Stay or Dismiss and Accompanying Independent Medical Evaluation and Diagnostic Psychological Evaluation along with numerous exhibits thereto with this Honorable Court. The Motion is improper as it contains numerous hearsay statements and/or reports which cannot be submitted to a court of law over the objections of the other Parties as to their admissibility.

## LEGAL BASIS FOR MOTION TO STRIKE THE COMPLAINT IN ITS ENTIRETY

1. The Tennessee Rules of Civil Procedure and the Tennessee Rules of Evidence apply to all Pleadings filed in this action, including the Petitioner's/Counter-Respondent's Motion and all exhibits thereto.

2. Tenn. R. Civ. P. Rule 8.05 provides that:

Each averment of a Complaint shall be simple, precise, and correct. Every pleading stating a claim...relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged. "The manner in which violation of any statute, ordinance, or regulation is claimed shall be set forth.

Tenn. R. Civ. P. Rule 8.05.

3.      Pursuant to <u>Tenn. R. Evid.</u>, <u>Rules</u> 403 and 803, a litigant may not rely upon or attempt to introduce irrelevant evidence and/or hearsay evidence when asserting or attempting to prove their case.

4.      The Petitioner/Counter-Respondent, Ms. Toutges, has improperly attempted to submit numerous hearsay documents and/or statements to the Court through her Motion and exhibits as attached thereto in direct violation of the <u>Tennessee Rules of Evidence</u>. Specifically, Paragraph 7, a Certified Witness Affidavit from Elisa Katschka, the Affidavit and all information related to the same is inadmissible over the objections of the other Parties as the same is hearsay and unless Ms. Katschka is available to be cross-examined at trial; Paragraph 8 all emails, etc., that are between people who will not be witnesses at the hearing are hearsay and are not admissible over the objection of the other Parties as the people in the emails cannot be cross-examined; all police reports, etc., which have been improperly attached to the pleading and/or any and all references thereto and/or information therefrom is hearsay; the report of Dr. Ryan Boddy and/or any and all medical records and/or statements and/or reports by Dr. Ryan Boddy and/or Dr. Mark Rice as the same are hearsay and as the providers cannot be cross-examined as to the contents of the same and all references, information and/or documents related to any of the above materials in any filings on record with this Honorable Court are inadmissible under the <u>Tennessee Rules of Evidence</u> and have been improperly submitted to the Court through a pleading to the detriment and prejudice of the Respondent/Counter-Petitioner. The Respondent/Counter-Petitioner would aver that the pleadings, as submitted, are so prejudicial and improper due to the inability of the other Parties to cross-examine the people referenced therein, so as, to require that the same be stricken from the record.

**5.** Pursuant to <u>Tenn. R. Civ. P., Rule</u> 12.06 the Court may order stricken from any pleading inadmissible averments and/or exhibits.

**6.** Courts have held that, although ordinarily a Motion to Strike would not be the proper vehicle by which to strike an entire pleading but only those portions which are objectionable, a Motion to Strike can be used to eliminate an entire pleading, including a complaint, where its allegations are offensive, scurrilous or in gross violation of <u>Tenn. R. Civ. Pro. Rule</u> 8. <u>Curve Elementary School Parent & Teacher's Organization v. Lauderdale County School Board</u>, 608 S.W.2d 855 (Tn. Ct. App. 1980); <u>Skolnick v.Hallett,</u> 350 F.2d 861 (7ᵃ Cir. 1965). The Petitioner's/Counter-Respondent's Motion and exhibits thereto contain hearsay which is unjustly prejudicial to the Counter-Petitioner/Respondent and which she cannot properly answer and/or defend against as she does not have the ability to cross-examine the people allegedly providing the statements. The hearsay documents violate the Respondent's/Counter-Petitioner's right to cross-examine non-party witnesses and/or not to be subjected to the use of hearsay/suppositional statements and/or documents through the submission of pleadings. Moreover, the hearsay/suppositional averments and/or documents are so interwoven into the pleading, as written and submitted to this Honorable Court, that the evidentiary issues and possible prejudicial effect on the Respondent/Counter-Petitioner cannot be fully remedied without striking the pleading and exhibits from the record in their entirety.

## II.  LEGAL BASIS FOR MOTION TO STRIKE SPECIFIC AVERMENTS

**1.** Pursuant to <u>Tenn. R. Evid. Rule</u> 803, hearsay evidence is not admissible.

**2.** Pursuant to <u>Tenn. R. Civ. P., Rule</u> 12.06 the Court may order stricken from any pleading redundant, immaterial, impertinent, inadmissible, or scandalous averments and/or exhibits.

4

**3.** The Petitioner/Counter-Respondent, Ms. Toutges has attempted to use her motion and exhibits to introduce evidence and/or statements into the records which are inadmissible under the Tennessee Rules of Evidence, if objected to by the other Parties in the case, in direct violation of Tenn. R. Evid., Rule 803. As such, the Respondent/Counter-Petitioner avers that this Honorable Court should either strike the averments and exhibits referenced in this Motion individually or strike the Petitioner's/Counter-Respondent's/Ms. Toutges, Motion and exhibits in their entirety as the same are so highly improper in their current form, as to, improperly and unjustly impede upon the Respondent's/Counter-Petitioner's rights under the law.

**WHEREFORE PREMISES CONSIDERED**, your Respondent/Counter-Petitioner respectfully prays that:

1. That this Honorable Court enter an Order striking the Petitioner's/Counter-Respondent's, Motion to Stay or Dismiss and Accompanying Independent Medical and Diagnostic Psychological Report and Physician's statement and all exhibits thereto from the record in this case in their entirety and/or striking the Averments and correlating Exhibits, set forth and/or referenced in Paragraphs: Paragraph 7, a Certified Witness Affidavit from Elisa Katschka along with Ms. Katschka's Affidavit; Paragraph 8 all emails, etc., that are between people who will not be witnesses at the hearing/cannot be cross-examined; all police reports, etc., which have been improperly attached to the pleading and/or all references to and/or information from and/or the report of Dr. Ryan Boddy and/or any medical records and/or statements and/or reports by Dr. Ryan Boddy and/or Dr. Mark Rice as the same are hearsay and as the providers cannot be cross-examined as to the contents of the same and all references, information and/or documents related to any of the above materials in any filings on record with this Honorable Court and for an Order precluding any evidence or testimony related to the above-stated materials unless properly

5

49

produced through trial testimony of the experts or witnesses named and/or by deposition testimony through a properly and timely scheduled deposition in terms of expert witnesses

**2.** That the costs of this proceeding be taxed against the Petitioner/Counter-Respondent/Ms. Toutges.

**3.** That the Respondent/Counter-Petitioner/Ms. McKaig be awarded an attorney's fees and costs judgment against Ms. Toutges for any and all fees and/or costs she incurs in relation to this matter to be paid within no more than thirty (30) days from the date of entry of the Order on this matter.

**4.** For such other and further relief to which the Respondent/Counter-Petitioner/Ms. McKaig may prove herself entitled to.

Respectfully submitted this the 15th day of Jel y , 2020.

**JODI B. LODEN, BPR No.: 26440**
**Attorney for Ms. McKaig**
**6330 Baum Drive**
**Knoxville, TN 37919**
**(865) 909-7320 x 2104**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing Motion was duly served upon all counsel of record herein by mailing a copy of same, postage pre-paid, via First Class U.S. Mail, addressed as follows:

Mitchell R. Miller
Attorney for Petitioner
1616 Westgate Circle
Brentwood, TN 37027

Jennifer Chadwell
Guardian Ad Litem
240 West Tennessee Avenue
Oak Ridge, TN 37830

H. Daniel Forrester
Attorney Ad Litem
711 S. Charles G. Seivers Blvd.
Clinton, TN 37716

This 15th day of July , 2020.

Jodi Loden

EXHIBIT N – Court Order Dismissing Ms. Hendrix's "Complaint" and Taxing Fees

**IN THE CHANCERY COURT FOR ANDERSON COUNTY, TENNESSEE**

| | |
|---|---|
| **ANTHEA HENDRIX TOUTGES,**<br> Petitioner, | )<br>)<br>) |
| **v.** | )     **No. 01CH1436**<br>)**(NOTICE OF ENTRY REQUESTED)** |
| | ) |
| **JENNIFER McKAIG,**<br> Respondent. | )<br>) |

**IN RE:**     <u>THE LIMITED CONSERVATORSHIP OF JOEL McKAIG</u>

**ORDER**

**THIS CAUSE,** came to be heard on 12th and 13th days of August 2020, upon the trial of this matter upon the Petitioner's, Anthea Hendrix Toutges', (hereinafter the "Petitioner"), Petition to Remove Conservator, Motion to Strike the Motion for Restraining Order filed by the Respondent and Motion to Dissolve and/or Modify the Restraining Order entered against her by this Honorable Court on July 22, 2019, and the Respondent's/current conservator's, Jennifer McKaig's, (hereinafter, the "Respondent"), Petition to Expand the Conservatorship, Motion for Restraining Order and Motion for Judgment for Attorney's Fees and Cost and Lien and/or Garnishment Enforcing Same, appearing for the trial were the Petitioner, Anthea Hendrix Toutges, *pro se*, the Respondent, Jennifer McKaig, the Respondent's counsel of record, Jodi B. Loden, the *Guardian Ad Litem*, Jennifer Chadwell, and the *Attorney Ad Litem*, Daniel Forrester, and numerous witnesses, the Court after hearing the statements and arguments of all counsel of record and the

1

**RECEIVED**<br>AUG 2 1 2020<br>BY:_____



Petitioner, Anthea Hendrix Toutges, *pro se*, after taking testimony from both Parties and numerous witnesses and after reviewing multiple exhibits, including the IME Reports of Dr. Montgomery and Dr. Caruso, as submitted into evidence as written and without objection by prior Agreed Order of the Parties, and the Affidavits of Dr. Amin which was submitted into evidence at a prior hearing without objection, and referenced and relied upon again in this proceeding and which are part of this Honorable Court's record, and, upon the file as a whole, does hereby find and it is therefore **ORDERED, ADJUDGED** and **DECREED** as follows:

      **1.** That the Respondent's oral motion for a ruling upon conclusion of the Petitioner's Proof/to deny the Petitioner's Petition to Remove Conservator based upon the proof before the Court, after the presentation of and conclusion of the Petitioner's case at trial, is granted. Specifically, the Court finds and holds that, pursuant to <u>Tenn.. Code Ann.</u> 34-3-108, which deals with the discharge of a conservator and the modification of duties of and/or termination of a conservatorship, a conservator appointed under this chapter may be discharged or have its duties modified if the court determines that the Ward is no longer a person with a disability. Based on the medical proof provided today as Exhibits 3 and 4 and the previously entered exhibits/Affidavits of Dr. Amin, that is not the case. Clearly Joel/the Ward is still a person with a disability, who is in need of a conservatorship. The statue then states that the Court may act when the Court finds that it is in the best interests of the person with a disability to terminate and/or modify the conservatorship. Again, based upon the medical proof provided in court today, that is not. None of the medical

2

providers who have evaluated Joel/the Ward have issued a medical/expert opinion stating

that it is in Joel's/the Ward's best interests for him not to have a conservator. In fact, the

exact opposite is true. The medical proof that has been provided to the Court indicates that

the limited conservatorship is no longer sufficient and that, in all of the physicians'

opinions, that Joel/the Ward needs an expanded/full conservatorship. The statute then

states that the Court may act if the conservator has failed to perform its duties and/or

obligations, in accordance with the law. Based on the testimony of everyone we have

heard from so far, as part of the Plaintiff's proof, there is no testimony that indicates or

gives this Court any concern that rise to the level to indicate that the conservator, Jennifer

McKaig, has failed to meet her duties and/or obligations, under this Court's

Conservatorship Order. Joel/the Ward is safe, stable and progressing well in his treatment

and is capable of maintaining his medication compliance. Joel/the Ward is no longer

suffering from the delusions and/or hallucinations, which have been a previous issue for

him. Joel's/the Ward's outbursts and the problems with his care, which his treating facility

had previously seen and reported to this Honorable Court have now subsided, and he is

doing well. He is stable enough that he is able to leave the facility and hold down a part-

time job, at times. So, in this Court's opinion, Joel/the Ward is doing very well under the

conservator and, as such, the Court finds that the conservator is meeting her obligations

and duties under the conservatorship mere credence. The next section of the statute

provides that the Court may act if the conservator has failed to act in the best interests of

the person with the disability so as to warrant a modification or termination of the

3

conservatorship. Again, based upon the testimony that has been provided as part of the Petitioner's case in chief, there is no evidence that the Respondent, Jennifer McKaig, is failing to act in Joel's best interests. And again, I go back and state that all we need to do is look at Joel's/the Ward's current state in his care, his stability, his medication compliance, and all of that has been due to the efforts of his conservator, Jennifer McKaig, has made to stabilize Joel/the Ward by getting him the care that he needs, by having him placed in a group home and by continuing with the level of care that his medical condition requires. The above being the only statutory grounds upon which a Court is authorized to remove a conservator and/or modify and/or terminate a conservatorship and the Court having not heard any testimony and/or having been provided with any proof that any of the aforementioned statutory grounds exists through the conclusion of the Petitioner's case in chief, denies the Petitioner's Petition to Remove the Conservator.

2. The Court then having requested and having heard additional testimony from the Respondent as to all remaining issues in the case finds and orders as follows that, based upon the medical proof that has been provided, specifically, the Independent Medical Report of Dr. Montgomery, the Independent Medical Report of Dr. Caruso, and the Affidavits of Dr. Amin, as submitted into evidence, without objection, at prior hearings and as relied upon and referenced again at the trial of this matter, the medical testimony before this Court is unanimous and conclusively establishes that Joel/the Ward is in need of a full conservatorship. Therefore, the Respondent's Petition for a Full/Expanded Conservatorship is found to be well-taken and is, hereby granted. The conservatorship will

4

be and is hereby expanded to include a conservatorship over, not only Joel's/the Ward's person and his medical care but also over Joel's/the Ward's financial and legal matters.

Having taken into consideration who might best serve in the role of conservator for Joel/the Ward, the Court finds that it is unlikely and problematic and not in Joel's/the Ward's best interests in any way to have the Petitioner and the Respondent attempting to serve as conservators for Joel/the Ward together. There is no doubt in the Court's mind that the same would not work and would not be in Joel's/the Ward's best interests. Therefore the Court expands the conservatorship that Jennifer McKaig currently has over Joel/the Ward to a full conservatorship. Per statute, the Court now enumerates the rights to be removed from Joel McKaig/the Ward and vested in Jennifer McKaig/Joel McKaig's conservator to include: (1) the right to give, withhold, consent to and/or make other informed decisions relative to the Ward's medical care and/or mental health examinations and treatment; (2) The right to make end-of-life decisions; (3) the right to consent to and/or withhold consent for the entry of a "do not resuscitate" order; (4) the right to grant and/or withhold consent concerning the withholding or withdraw of artificially provided food, water and/or nourishment; (5) the right to consent to and/or withhold consent to the admission to and/or for hospitalization and/or to be discharged or transferred to a residential setting, group home and/or other facility for additional care and/or treatment; (6) the right to participate and/or to withhold the right to participate in activities and therapies which are reasonably necessary for the rehabilitation of the Ward; (7) the right to consent to and/or to withhold consent to any residential and/or custodial placement; (8)

5

the power to give, receive, release, or authorize disclosures of confidential information related to the Ward and/or to prohibit the same, including the Ward's medical records; (9) the right to apply for benefits, public and/or private, for which the person with the disability may be eligible; (10) the right to dispose of the Ward's personal and/or real property, subject to statutory and/or judicial constraints; (10) the right to determine whether or not the Ward may utilize a Driver's License for the purpose of driving; (11) the right to make large purchases. However, the Court notes that Joel/the Ward does have a part-time job and funds at his disposal, which he is capable of using to purchase things such as clothing, food, lunches and that sort of thing. As such, the Court finds and holds that, although Joel will be restricted from making large purchases (to be defined as anything larger than $1,000.00), he may make lesser purchases (less than $1,000.00 purchases) without the consent of his conservator; (12) the right to consent to and/or withhold consent to enter into contractual relationships; (13) the right to consent to and/or withhold consent to the execution of instruments of legal significance; (14) the right to pay Joel's/the Ward's bills and to protect and invest Joel's/the Ward's income and assets; (15) the right to prosecute and defend lawsuits on behalf of Joel/the Ward; (16) the right to execute on behalf of Joel/the Ward any and all documents to carry out any of the authorities vested in the conservator above. The above are the specific rights, duties and obligations which shall be and are hereby removed from the Ward/Joel McKaig and vested exclusively in the conservator for the Ward/Joel McKaig, Jennifer McKaig. The Ward's conservatorship is hereby transferred from a limited conservatorship to a full

6

conservatorship with Jennifer McKaig appointed as Joel McKaig's full conservator with all of the rights, obligations and duties set forth above.

3. That the Petitioner's, Anthea Hendrix Toutges', request to modify and/or dissolve the July 15, 2019 Restraining Order which was entered against her in this case is denied. The Restraining Order shall remain in full force and effect until and unless modified and/or dissolved by further order of this Honorable Court. In issuing this ruling, the Court's concern, as it relates to the Restraining Order, is what is in the best interests of Joel/the Ward, as far as it relates to his medical care, his stability in the home in which he is currently residing, his ability to proceed along the pathway that his conservator, his physicians and the home have set for him and in reaching stability and one day potentially being able to step down to a less restrictive group home. That being the case, the Court is relying upon the affidavits of Joel's/the Ward's medical providers, as previously entered into evidence without objection, as referenced and relied upon in this proceeding, and as part of this Honorable Court's record, as well as, all exhibits that were presented today and, as well as, the past actions of the Petitioner/Ms. Hendrix Toutges in this case. There have been a series of events that have taken place that, in the view of the medical providers that interfere with Joel's/the Ward's care. That is the Court's concern at this point, placing Joel/the Ward back into a position where the Petitioner/Ms. Hendrix Toutges would be able to interfere with and/or interrupt Joel's/the Ward's care and the stability that Joel/the Ward has been able to retain. Because the medical proof is contradicted in this action, the Restraining Order will remain in place until such time as there is a current, treating

7

physician of Joel's/the Ward's that will come before the Court and state that Joel/the Ward has reached a level of stability that we can now seek to start to reintegrate his relationship with the Petitioner/Ms. Hendrix Toutges and that the same is in Joel's/the Ward's best interests. But because the medical proof does not indicate that and, in fact, indicates the opposite, that the contact and relationship with Ms. Hendrix Toutges is a trigger for Joel/the Ward, that he becomes more unstable and lashes out, that he regresses in his mental state after contact with Ms. Hendrix Toutges, the Court cannot find that, at this time, it is in the best interests of Joel to have the Restraining Order lifted and/or modified and therefore it will remain in full force and effect. The Court further finds that the Restraining Order's provisions protecting the Ward's treating physicians, home and other caregivers and prohibiting Ms. Hendrix Toutges from contacting, threatening, harassing, etc., the same shall also remain in full force and effect as the same is in the bests interests of the Ward/Joel and his care and treatment.

4.     That the Respondent's, Jennifer McKaig's, request for the entry of a Restraining Order against the Petitioner, Anthea Hendrix Toutges, is hereby granted. The Court finds and holds that the totality of the circumstances and the past interferences with Ms. McKaig's employment history by the Petitioner, Anthea Hendrix Toutges, justify the entry of a Restraining Order prohibiting the Petitioner, Anthea Hendrix Toutges, from posting about the Respondent, Jennifer McKaig, on any social media and/or employment site whatsoever and/or from contacting the Respondent, Jennifer McKaig, on any social media and/or employment site whatsoever. The Petitioner is further ordered to have no

8

contact, whatsoever, with any of the Respondent's employers. The Petitioner is further restrained from attempting to interfere with the Respondent's employment in any way whatsoever. Finally, the Petitioner is ordered to have no contact with the Respondent, except for emergency situations, such as the death of a family member.

5.     The Respondent's, Jennifer McKaig's, attorney's fees and costs, the *Guardian Ad Litem's* attorney's fees and costs and the *Attorney Ad Litem's* attorney's fees and costs are hereby taxed against the Petitioner, Anthea Hendrix Toutges, who was the Party that initiated this action by filing a Petition to Remove the Conservator which has been denied. The Respondent's attorney, the *Guardian Ad Litem* and the *Attorney Ad Litem* are hereby ordered to submit Affidavits reflecting their total attorney's fees and costs to this Honorable Court, after which, a hearing will be had on the amount of the attorney's fees and costs judgment. Thereafter, a judgment will be issued. The judgment shall be a judgment lien. The lien may be issued, filed and enforced against the Petitioner's, ~~Anthea~~ **personal** ~~Hendrix Toutges', share of/Inheritance from the probate estate of Bruce Hendrix~~ **property, real property, and/or financial assets.** and/or ~~against any other personal and/or real property and/or financial assets of the Petitioner~~ and may be filed against and/or garnished ~~against/from the Personnel Representative of~~ ~~the probate estate of Bruce Hendrix, thereby, requiring him to effectuate the judgment of~~ ~~this Honorable Court by paying said judgment from any inheritance proceeds payable to~~ ~~Ms. Hendrix Toutges, as/if allowed by the lien rules.~~ That, pursuant to Rule 62.01 of the Tennessee Rules of Civil Procedure, this Honorable Court finds and holds that the initial stay on the execution of this Honorable Court's attorney's fees and costs judgment shall be

*[handwritten margin note: WWC 9-10-2020]*

9

lifted as the Court finds that evidence in this case and the past conduct of the Petitioner are such that the Court has reason to be believe that the Petitioner/the Party against whom the judgment is being entered is likely to attempt to fraudulently dispose of, conceal and/or remove her portion of the inheritance proceeds from the Estate of Bruce Hendrix and/or any other assets that she may have so as to attempt to avoid enforcement of this Honorable Court's judgments, thereby endangering the satisfaction of the judgment.

6.    That this Honorable Court will hold a hearing on August 21, 2020 at 9:45 a.m. to determine the amount of the attorney's fees and costs judgments in this case and to resolve any disputes with the proposed Orders submitted to this Honorable Court.

ENTERED and ORDERED this _____ 10th day of _____ September, 2020,

NUNC PRO TUNC, August 13, 2020.

HONORABLE M. NICHOLE CANTRELL

APPROVED FOR ENTRY:
PETERSON WHITE LAW FIRM

_____
Jodi B. Loden, BPR# 026440
6330 Baum Drive
Knoxville, TN 37919
(865) 909-7320

60

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing Order was duly served upon all counsel of record herein by mailing a copy of same, postage pre-paid, via First Class U.S. Mail, addressed as follows:

Jodi B. Loden
Attorney for Respondent
6330 Baum Drive
Knoxville, TN 37919

Anthea Hendrix Toutges
Pro Se
107 Flenniken Ave. Apt. 201
Knoxville, TN 37920

Jennifer Chadwell
*Guardian Ad Litem*
240 West Tennessee Aveue
Oak Ridge, TN 37830

H. Daniel Forrester
*Attorney Ad Litem*
711 S. Charles G. Seivers Blvd.
Clinton, TN 37716

This **14** day of **Sept.**_____, 2020.

_____
**COURT CLERK**

## IN THE CHANCERY COURT FOR ANDERSON COUNTY, TENNESSEE

|  |  |  |
|---|---|---|
| IN RE: THE LIMITED CONSERVATORSHIP OF JOEL McKAIG | ) ) ) ) | |
| ANTHEA HENDRIX TOUTGES, Petitioner. | ) ) ) | Docket No. 01CH1436 |
| v. | ) ) | |
| JENNIFER McKAIG, Respondent. | ) ) ) | |

### AMENDED PETITION TO REMOVE CONSERVATOR

Comes now Petitioner, Anthea Hendrix Toutges, by and through counsel, pursuant to Tenn. Code Ann. § 34-3-108, and hereby petitions this Court for the removal of Jennifer McKaig, as the conservator for Joel McKaig, and states as follows:

### Joel McKaig

1.      Joel McKaig ("Ward") is a 38-year-old man who has been under a limited conservatorship for his entire adult life. The Ward has Schizoaffective Disorder, Bipolar Type and substance abuse disorders that render him unable to make his own medical decisions.

2.      The Ward's date of birth is May 30, 1982.

3.      The Ward's legal domicile is in Wilson County, Tennessee. He has not resided in Anderson County, Tennessee since early October 2018. Tenn. Code Ann. §

34-3-101(b) requires "An action for the appointment of a conservator shall be brought in the county of residence of the alleged person with a disability."

4.     The Ward currently lives at a group home, Cedarcroft Home, located at 202 S College St, Lebanon, TN 37087 in Wilson County, Tennessee, which has been his primary residence since December 2018

## Petitioner

5.     Petitioner, Anthea Hendrix Toutges, is the Ward's mother.

6.     Petitioner is 67-years-old and resides at 107 Flenniken Drive, Apt. 201, Knoxville, Tennessee 37920.

7.     Petitioner is proposed to replace Respondent as the Ward's conservator. Petitioner was the Ward's conservator from May 2001 to May 2018. Petitioner is willing, able, and appropriate to serve as Ward's conservator.

8.     Tennessee conservatorship law requires that at least one of the Ward's conservators reside in Tennessee. Tenn. Code Ann. § 34-3-101(b) requires "An action for the appointment of a conservator shall be brought in the county of residence of the alleged person with a disability."

9.     Petitioner has not been convicted of any felonies or misdemeanors.

## Respondent

10.     Respondent, Jennifer McKaig, is the Ward's sister and limited conservator.

11.     Respondent is 42 years old and resides at 353 Ocean Avenue, 5B, Brooklyn, New York. She is not a resident of Tennessee.

2

12.     Upon information and belief, Respondent has not been convicted of any felonies or misdemeanors.

**Other Relatives.**

13.     Dennis McKaig is the Ward's father, who resides at 2883 Dalhard Road, Simi Valley, CA 93063.

14.     The Ward does not have other relatives who must be indicated here.

### Ward's Disability

15.     This Court determined that Ward has a mental disability and requires a conservator by Order on May 25, 2001

16.     Respondent has since been examined by Drs. Caruso and Montgomery. Their Independent Medical Reports have been admitted into evidence in this case by Agreed Order of the parties. Petitioner hereby incorporates those reports into this Petition by reference in satisfaction of Tenn. Code Ann. § 34-3-104(7).

17.     Ward has suffered from mental illness since childhood. He was first diagnosed with a psychotic disorder when he was 12. At age 15, he was diagnosed with Schizoaffective Disorder, Bipolar Type. As a result of his condition, Ward suffers hallucinations, paranoid delusions, anxiety, depression, mania, suicidal ideations and other adverse psychological symptoms. Ward has attempted suicide more than once.

18.     Ward requires antipsychotic medications for mentally stability.

3

19.     Ward also requires medication and angioplasty procedure to treat chronic arterial blockage near his heart.

20.     However, Ward has a history of noncompliance with his medication regimen unless he is closely supervised.

21.     Ward primarily needs a conservator to assist in this regard.

22.     Despite his disability, Ward is intelligent and high-functioning. Ward has earned a normal high school diploma. He can manage some aspects of independent living such as driving, cleaning, holding simple jobs, managing small portions of his finances, and other modest activity that allow him to retain a sense of independence and dignity. Currently, Ward works at his group home and earns money for personal expenses, which he is managing well.

23.     Petitioner requests the Court continue to impose a limited medical conservatorship so that Ward retains maximum independence while also receiving the support he needs, as required by Tennessee law.

## Removal of Conservator

24.     Petitioner respectfully requests the Court remove and discharge Respondent as conservator for Joel McKaig pursuant to Tenn. Code Ann. § 34-3-103(4) and § 34-3-108, or order a shared conservatorship with Petitioner as primary and Respondent as back-up and that shared conservatorship be reviewed at two-year intervals to ensure that the Ward is receiving the care and support he needs

25.     Respondent has failed to perform her duties and obligations in accordance with the law or by any order of the Court. Respondent violated February

4

11, 2019 and March 28, 2019 Court Orders for medical evaluation and afterward motioned for a new evaluation, forcing Petitioner to pay $6,400 for the evaluation that had been performed in accordance with the March 28, 2019 bench order.

26.     The negligence resulted in injury to the Protected Person or the estate of the Protected Person; or

27.     There is a substantial likelihood that the negligence would result in injury to the Protected Person or the estate of the Protected Person;

28.     Respondent has failed to act in the best interests of the Ward so as to warrant her termination as conservator. Respondent sent the Ward to live with his mentally disabled father in California who is not mentally equipped to care for Joel, risking his safety and well-being.

29.     Respondent's failures are rooted both in negligence and personal spite for Petitioner. Respondent's personal animus toward Petitioner is unfounded and is damaging to Ward. Exhibit A is a letter Respondent submitted to a Richmond, VA judge in April 2008 accusing her mother of having a psychotic mental illness. Exhibit B is an October 31, 2018 police report in which Respondent impugned her mother to Knoxville police, accusing her of "also being mentally ill" and demanding that she hand over the Ward's wallet and car keys after he requested that his mother manage his bills and property. In order to defend herself against her daughter's allegations, Petitioner obtained a medical report from her PCP in 2017. In March 2020, Petitioner voluntarily underwent a thorough psychological assessment and obtained a medical report from her PCP (Exhibits C, D, E).

5

30. Respondent's neglect of Ward began almost as soon as she was appointed as his limited conservator on May 25, 2018.

31. That month, Respondent was diagnosed with blockage of his arteries and was immediately scheduled for an angioplasty procedure on June 5, 2018.

32. Respondent failed to arrange or otherwise ensure that Ward to get to the hospital for that procedure. As a result, Ward did not have the procedure he needed.

33. In the following months, Respondent failed to establish a regular cardiologist for the Ward, even while Petitioner tried to help in this regard.

34. In fact, Respondent failed to arrange for Ward to visit a cardiologist for over a year—at least from July of 2018 to September 2019.

35. In early October 2018, Ward was hospitalized at Parthenon Pavilion in Nashville for a psychotic episode.

36. Around this time, Respondent learned that Ward requested that Petitioner manage his property instead of Respondent.

37. This angered Respondent, who would prefer for Ward and Petitioner not to have a relationship.

38. Respondent then retaliated against Ward by intentionally withholding prescription information from the staff at Parthenon for the Ward's required heart medications.

6

39.     In doing so, Respondent willfully withheld needed heart medication from Ward for two and a half weeks before she eventually told Parthenon staff what Ward needed.

40.     Ward knew he needed heart medications.

41.     Respondent knew Ward understood that.

42.     Respondent was punishing Ward by intentionally withholding medications in this way.

43.     Respondent's actions caused Ward undue anxiety, stress, and fear.

44.     Respondent's intentional actions against her mentally ill brother were nothing short of psychological torture.

45.     In November 2018, Petitioner was forced to hire an attorney and file an Amended Petition for Removal of Conservator to force her daughter to provide the hospital with the Ward's prescription information.

46.     During Ward's stay at Parthenon, Respondent misused her authority to ban Petitioner from visiting Respondent. There was no good reason for this. Respondent was acting purely on her animus toward Petitioner. This was a cold and calculated decision to separate a mother and son at a time where Ward needed Petitioner's love and support. As a result of Respondent's cruel decision, Ward spent Thanksgiving alone in a hospital room with no family visitation. Petitioner was not permitted to visit her son at all during his two-month hospitalization. Respondent then forced the hospital staff not to allow Petitioner to call her son. This isolated the Ward from his only close family in the state.

7

47.     When the Ward was discharged to Cedarcroft Home in Wilson County, Petitioner enjoyed three happy visits with her son. The Ward enjoyed his mother's visits and this enraged Respondent.

48.     Respondent demanded the group home ban her mother's visits; however, Cedarcroft Home refused to do so without a court order.

49.     Respondent filed the Temporary Restraining Order (TRO) to stop her mother from visiting the Ward out of malice. That is why Respondent violated two court orders for a medical evaluation and only allowed Dr. Caruso to evaluate the Ward after she motioned the court for a separate evaluation.

50.     The Ward has protested the restraining orders from the beginning, but the distance made it impossible for him to attend hearings. His attorney failed to advocate for him against the restraining order.

51.     Petitioner has been the only party to advocate for her son's right to his mother's love and support.

52.     Respondent has evidenced a conflict of interest between her personal intentions and her fiduciary duties to Ward. Respondent has a lengthy history of animosity toward her mother.

53.     Respondent began assaulting her mother at age 12 and continued until she was arrested for assaulting her mother when she was home from college in the late 1990's.

54.     In 2007, Respondent began to malign and impugn her mother with lies and to fabricate evidence against her.

8

55.     In late 2007, Respondent was fired from the Richmond House group home in Richmond, VA for violating HIPAA and her mother's conservatorship after she traveled to Knoxville and met secretly with the Ward's Peninsula Lighthouse day treatment manager for the purpose of concocting a scheme for having her mother's medical conservatorship removed.

56.     Respondent's scheme involved filing false reports of abuse with Adult Protective Services and lying to authorities to fabricate evidence against her mother.

57.     Respondent has also coached the Ward, her father and Petitioner's brother, Mr. Hendrix, to lie to authorities and help her fabricate evidence against her mother.

58.     In 2011, Mr. Hendrix took over the Ward as a live-in companion for his own disabled son and caused the Ward to miss two doctor's appointments he needed to attend for his medication refills.

59.     Petitioner was forced to file an Order of Protection of a Vulnerable Adult against her brother (Exhibit F) in which she detailed her concerns about her son running out of medication.

60.     Mr. Hendrix violated the order and spent a week in jail.

61.     Petitioner was heartsick about the situation and talked to her daughter about it.

62.     The Ward soon ran out of his medication and had to be hospitalized with a breakdown. Instead of being worried about her brother and supporting her

9

mother. Respondent coached Mr. Hendrix to lie to authorities to help her fabricate evidence against her mother.

63.     Mr. Hendrix told the hospital psychiatrist that the Petitioner had withheld her son's medication in order to obtain a letter from the psychiatrist accusing Petitioner of abuse and neglect (Exhibit G).

64.     After Respondent received limited medical conservatorship of the Ward, she became obsessed with obtaining full conservatorship and removing the Ward's legalright to drive and manage his own finances.

65.     Petitioner worked for years to help her son learn independent living skills to manage his money and pay bills.

66.     Petitioner taught her son to drive and helped him save for his first vehicle.

67.     Because of Petitioner's efforts, the Ward has worked part-time on a consistent basis for two years.

68.     Respondent intends to strip the Ward of all his rights so that he has no hope of gaining some measure of independence.

69.     Conservators are required to impose the least restrictive control in order to keep the Ward safe while allowing him to become as independent as possible.

70.     At other times, Respondent has characterized Ward as property she can give away, stating to Petitioner, "If I don't get things accomplished, I am giving Joel to the state."

10

71.    When Petitioner raises concerns about Ward's medication or similarly important topics, Respondent reacts defensively and her duties as conservator have endangered her career. In October 2018, Respondent took extended family leave from her job at Etsy Inc. in Brooklyn, NY where she had worked as a Diversity and Inclusion Lead. From April through August 2019, she was permitted to attend a course for a new career in internet data research. Afterward, her employment at Etsy Inc. was terminated.

72.    Respondent has even threatened to move Ward out of Tennessee and away from Petitioner just so Respondent can evade accountability and do less for Ward. Petitioner refused to allow the Respondent to place the Ward in an out-of-state group home after Respondent became his limited medical conservator.

73.    During the months Petitioner has been restrained from having contact with her son, Respondent has endangered the Ward by sending him to California to stay with his mentally disabled father who is not equipped to handle him. The Ward's father screams at him uncontrollably because of his own mental disability.

74.    Respondent has stated to Petitioner that she cannot bring the Ward to stay with her in New York for fear her husband will leave her.

75.    But while she wants less responsibility, Respondent also wants more control. When Ward entered a residential treatment program, he gave Petitioner his phone, wallet, keys and driver license and asked her to manage his bills and property because Respondent had begun pressuring him right away to give her full control. Ward had the absolute right to do that because the conservatorship

11

imposed on him does not remove his right to own and manage his property. Nevertheless, Respondent dispatched police to Petitioner's home to confiscate those items, in violation of Ward's right to control his property (Exhibit B, Police Report)

76.     Respondent's repeated, intentional, and negligent acts are harmful or dangerous to Ward. Respondent's actions show that she cannot—or will not—act in the best interest of Joel McKaig.

**Rights Affected**

77.     Petitioner request that the Court continue to impose a limited conservatorship over Joel McKaig, only removing from him and vesting in a conservator the following rights:

a.  The right to accept or refuse medical and mental health examinations;

b.  The right to accept or refuse medical and health treatment;

c.  The right to accept or refuse medical and mental health hospitalization;

d.  The right to accept or refuse surgery;

e.  The right to consent to placement in a group home, nursing home, or alternate living arrangement.

**WHREFORE PETITIONER PRAYS:**

1.     That Jennifer McKaig be removed as the conservator for Joel McKaig;

2.     That Petitioner, Anthea Hendrix Toutges, be reappointed as conservator for Joel McKaig;

12

3. That the conservatorship remain limited to Joel McKaig's medical

needs;

4. For recovery of costs, expenses, and attorney's fees in this action;

5. For all other relief as justice may require.

Respectfully submitted,

*Anthea Hendrix Toutges*

Anthea Hendrix Toutges
107 Flenniken Ave, Apt 201
Knoxville, TN 37920
Phone: 615-891-8337
Email: akh129@yahoo.com

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing document was served via U.S. Mail, postage prepaid, and email upon the following persons:

Jodi B. Loden, Esq.
Peterson White LLP
6330 Baum Dr.
Knoxville, TN 37919
jodi.loden@petersonwhite.com
*Attorney for Respondent*

Jennifer Chadwell
240 West Tennessee Ave
Oak Ridge, TN 37830
Jchadwell@jenniferchadwellattorney.com
*Guardian Ad Litem*

H. Daniel Forrester
711 S. Charles G. Seivers Blvd.
Clinton, TN 37716
forresterlaw@comcast.net
*Attorney Ad Litem*

Dated: July 27, 2020

*Anthea Hendrix Toutges*

Anthea Hendrix Toutges
107 Flenniken Ave, Apt 201
Knoxville, TN 37920
Phone: 615-891-8337
Email: akh129@yahoo.com

## IN THE CHANCERY COURT FOR ANDERSON COUNTY, TENNESSEE

| | |
|---|---|
| ANTHEA HENDRIX TOUTGES,<br>    Petitioner, | )<br>)<br>) |
| v. | )  No. 01CH1436<br>)(NOTICE OF ENTRY REQUESTED) |
| JENNIFER McKAIG,<br>    Respondent. | )<br>) . |

IN RE:    THE LIMITED CONSERVATORSHIP OF JOEL McKAIG

### ORDER

**THIS CAUSE,** came to be heard on the 22nd day of July, 2020, upon all motions filed with and/or pending before this Honorable Court through the date of the July 22, 2020 hearing/all pre-trial motions, except as otherwise allowed by this Honorable Court after arguments at the July 22, 2020 hearing, appearing for the hearing were the Petitioner, Anthea Hendrix Toutges, and her counsel of record, Mitchell Miller, the Respondent, Jennifer McKaig, and her counsel of record, Jodi B. Loden of Peterson White Law, the *Guardian Ad Litem* for the Ward, Jennifer Chadwell, and the *Attorney Ad Litem* for the Ward, Daniel Forrester, after hearing and entering as orders of this Honorable Court   the agreements of all counsel of record as to which motions would be withdrawn and/or dismissed and the arguments of counsel for the Parties, the *Guardian Ad Litem* for the Ward and the *Attorney Ad Litem* for the Ward on all other pending motions, and, upon review of





the file as a whole, this Honorable Court does hereby find and it is therefore **ORDERED,**
**ADJUDGED** and **DECREED** as follows:

      **1.**    That the Petitioner, Anthea Hendrix Toutges, by and through her counsel of
record, has advised this Honorable Court that she does not wish to pursue and is
withdrawing any and all Motions to Recuse the Chancellor through the date of the July 22,
2020 hearing. As such, any and all Motions to Recuse the Chancellor/this Honorable Court
and/or requesting the same, as filed by the Petitioner, Anthea Hendrix Toutges, are hereby
ordered to be withdrawn, at the request of the Petitioner, Anthea Hendrix Toutges.

      **2.**    That the Petitioner, Anthea Hendrix Toutges, by and through her counsel of
record, has advised this Honorable Court that she does not wish to pursue and is
withdrawing any and all Motions to Remove the *Guardian Ad Litem* through the date of the
July 22, 2020 hearing. As such, all Motion to Remove the *Guardian Ad Litem* and/or
requesting the same, as filed by the Petitioner, Anthea Hendrix Toutges, are hereby
ordered to be withdrawn at the request of the Petitioner, Anthea Hendrix Toutges.

      **3.**    That the Court finds that the Petitioner, Anthea Hendrix Toutges, never
requested and/or received the permission of the Parties and/or this Honorable Court to
Amend her first Amended Petition to Remove Conservator, which was filed on or about
November 5, 2018, and therefore, any and all Amended Petitions to Remove Conservator
and/or requesting the same, which were filed after November 5, 2018, by the Petitioner,
Anthea Hendrix Toutges, have been filed in violation of the Tennessee Rules of Civil
Procedure and are legally impermissible as leave to amend has never been requested

and/or granted. Further, the Petitioner's, Anthea Hendrix Toutges,' counsel has advised the Court that he and his client agree to any and all Amended Petitions for Removal of Conservator and/or for Conservatorship and/or requesting the same, as filed by the Petitioner, Anthea Hendrix Toutges, after November 5, 2018, being stricken from the Court's record, as leave to Amend was never granted by this Honorable Court after November 5, 2018 and the same is hereby ordered. The Petitioner is granted five (5) real days (not calendar days) from the date of July 22, 2020 hearing to file a proper Amended Petition, should she so desire.

    **4.**    That the Respondent, Jennifer McKaig, has agreed to and has withdrawn her Motion for Contempt, as filed against the Petitioner, Anthea Hendrix Toutges, and, the same is hereby ordered.

    **5.**    That the *Guardian Ad Litem* has advised the Court that the withdrawing of the Respondent's, Jennifer McKaig's, Motion for Contempt against the Petitioner, Anthea Hendrix Toutges, as well as, Mrs. Toutges having hired an attorney, resolves her concerns regarding the possible need for a *Guardian Ad Litem* for the Petitioner, Anthea Hendrix Toutges, and as such, she will leave it to the Court to decide whether her Motion for Appointment of a *Guardian Ad Litem* for the Petitioner, Anthea Hendrix Toutges should be granted or denied. The Petitioner's, Anthea Hendrix Toutges,' counsel has advised the Court that the Petitioner objects to having a *Guardian Ad Litem* appointed to represent her in this case and does not believe that the same is needed as, per the Petitioner and her counsel, the Petitioner's actual mental capacity is not diminished in any way that requires a

3

court's intervention and/or the appointment of a *Guardian Ad Litem*. The Respondent, Jennifer McKaig, and *the Attorney Ad Litem* did not argue either for and/or against the appointment of a *Guardian Ad Litem* for the Petitioner. After hearing arguments, the Court finds and holds that the *Guardian Ad Litem's* Motion for appointment of a *Guardian Ad Litem* for the Petitioner shall be denied as the Respondent, Jennifer McKaig, has withdrawn her Motion for Contempt and therefore the Petitioner, Anthea Hendrix Toutges, is no longer facing potential criminal liability/a heightened risk, as the Petitioner, Anthea Hendrix Toutges, is represented by counsel and as both the Petitioner, Anthea Hendrix Toutges, has represented to the Court, through her counsel of record, that she is not in need of a *Guardian Ad Litem* as she possesses the mental acuity to litigate and defend this case. This Honorable Court further finds and orders that the Petitioner's, Anthea Hendrix Toutges', counsel's oral motion to submit Dr. Brody's medical report and other various medical records into the Court's record in support of his assertion that the Petitioner, Anthea Hendrix Toutges,' is not in need of a *Guardian Ad Litem*, shall be denied as the *Guardian Ad Litem's* Motion for Appointment of a *Guardian Ad Litem* for the Petitioner has been denied and, as such, the reports, etc., are not necessary to defend against the same.

     **6.** That the Respondent's, Jennifer McKaig's, Motion to Continue the Petitioner's Motion for Removal of Conservatorship to the Trial Date is hereby granted as the Motion for Removal of Conservatorship deals with an ultimate issue which is best resolved at trial and, as the Petitioner's, Anthea Hendrix Toutges,' counsel has consented to the Petitioner's Motion for Removal of Conservatorship being heard at trial.

4

7.     That the Court finds that the Respondent's, Jennifer McKaig's, Motion to

Allow Out of Town Witnesses, the Ward and/or the Respondent to Testify Via Zoom at

trial is well-taken and shall be and is hereby granted. Specifically, the Court finds and

holds that the Ward, all out of county witnesses, requested by the Respondent, and the

Respondent, Jennifer McKaig, may appear via Zoom at the trial of this matter. The Court

further holds that the Ward is not under any court order to appear in this matter. It is the

Ward's right to participate or not in the trial of this case and/or in any hearings in this case.

The Ward has spoken to both his *Guardian Ad Litem* and his *Attorney Ad Litem* and has

advised both of his court-appointed attorneys that he does not wish to appear for any

hearings and/or the trial in this case (the Court notes that the Ward has appeared at past

hearings/trials in this matter, when he wished to do so and, as such, has never been denied

the right to appear for hearings/trials, when he wished to do so). A valid and timely

Subpoena may be issued requiring the Ward's attendance. However, the Court reminds the

Parties and their counsel that the Ward is a person who already has a conservatorship in

place. So, the depth/weight of his testimony is a question for the Court, as the Ward has

already been declared incompetent and in need of a conservatorship, which is in place. The

Parties and their attorneys need to remember that a conservatorship has already been

ordered/found to be necessary/not lose sight of the same. The Court will not require the

Ward to appear in person. The Court has wide discretion to allow testimony via Zoom. It is

the opinion of the Court that the Court's discretion is expanded even further by the current

Tennessee Supreme Court Orders/our standing Orders related to the COVID-19 pandemic,

5

which state that courts are, in fact, to use Zoom conveniently and, as needed, because of the risk of infection. As it related to the Ward, the Ward resides in a group home where his being possibly exposed to COVID-19 and then bringing it back to the group home is a major factor for the Court to consider, as well as, the hardship to the Ward in being required to attend the trial in person and then being required to be quarantined simply because he attended a hearing and/or a trial, especially when he doesn't even want to be here. As to the other witnesses in the Nashville area, which is much harder hit by the virus right now than we are, even though our cases are spiking, the Court finds that Nashville is a hot spot for COVID-19. Given the same, the Court will not force witnesses to travel from Nashville to Knoxville and/or to have to be quarantined if they do travel here to testify in person, as many of these witnesses are healthcare providers and/or work in the Ward's group home. The hardship of forcing witnesses to travel from the Nashville area for an in-person hearing, given all that is occurring with the virus and/or the possible resulting quarantines warrants the witnesses being allowed to testify via Zoom. The Court believes that it is within the Court's discretion to enter these orders and that the Court is in-line with the Tennessee Supreme Court's directive to allow Zoom hearings to take place, as needed/necessary. The Ward can attend the trial, if he wishes to do so or if he is properly subpoenaed, and can testify via Zoom, as can all other witnesses from the Nashville area and the Respondent, Jennifer McKaig, who resides in New York, as these witnesses really cannot travel to trial without quarantining being and/or likely being required afterwards and the hardship is just to great.

6

**8.** That this Honorable Court finds and holds that the Petitioner's, Anthea Hendrix Toutges,' Motion for a Change of Venue is hereby denied. Specifically, this Honorable Court finds and holds that this Honorable Court obtained original jurisdiction and venue when the original Petition for Appointment of a Conservator was filed years ago. This is a very old case with a lot of history. When the Court issued its original order appointing a conservator for the Ward in 2001, the Court had venue. The Petitioner, Mrs. Anthea Hendrix Toutges, has assumed the role of the Petitioner in the case currently before this Honorable Court, which is her petition to remove the conservator who has already been appointed by this Honorable Court, Mrs. McKaig. Statutorily, it is the Respondent who may request a change of venue not the Petitioner absent the consent of all Parties and/or an order of the Court. The Court further finds that the Petitioner, Anthea Hendrix Toutges, raising the issue of venue twenty-one (21) days prior to trial is highly prejudicial and untimely. The expense for the litigants to start a case over that has been pending (this time) before this Honorable Court since November of 2018 and overall, since at least, 2001, in another court is an undue hardship and not judicially efficient. As such, this Honorable Court shall maintain jurisdiction and venue and this case shall proceed to trial on August 12, 2020, as scheduled. The Court further finds that the fact that some witnesses are located in another county is not a consideration as it relates to jurisdiction and/or venue, especially as the witnesses can appear via Zoom.

**9.** That this Honorable Court finds and holds that the Petitioner's, Anthea

7

Hendrix Toutges,' Motion to Resolve the Restraining Order prohibiting contact between herself and the Ward is untimely and shall be denied. The Court does not find that the Petitioner's request to dissolve the Restraining Order via motion hearing only twenty-one (21) days prior trial is timely and/or judicially efficient. The Court further finds and holds that, part of the reason the Restraining Order was issued was due to the Petitioner's, Anthea Hendrix Toutges, repeatedly taking actions to interfere with the Ward's attorney-client relationship with his *Attorney Ad Litem*, by drafting legal documents and then presenting them to the Ward to sign, to be filed in this cause of action. The Court will not release the Petitioner, Anthea Hendrix Toutges,' from the Restraining Order just twenty-one (21) days prior to the trial in this case, so as, to potentially allow her to continue to try to and/or to interfere with the Ward's relationship with his court-appointed attorneys.

The Court further notes that the expanded Restraining Order was also put into place due to the Petitioner's, Anthea Hendrix Toutges,' repeat violations of the prior court orders restricting her contact with the Ward and/or violating the Court's directives that the Petitioner, Anthea Hendrix Toutges, not prepare legal documents for the Ward, after which, the Petitioner, Anthea Hendrix Toutges, continued to violate the Court's directives and/or orders by typing up proposed Affidavits, presenting the proposed Affidavits to the Ward, having the Ward sign the Affidavits and then filing the Affidavits with this Honorable Court without the knowledge and/or involvement of the Ward's court-appointed legal counsel. The Court will not release the Restraining Order twenty-one (21) days prior to trial. As such, the Motion to dissolve the Restraining Order, as currently on

8

file with this Honorable Court is untimely and is denied due to the Court's concerns regarding the Petitioner's possible interference with the Ward's representation/the litigation until the trial is finished. The Petitioner, Anthea Hendrix Toutges, is granted leave to file another motion to resolve the restraining order after trial should she choose to do so.

10. That the Petitioner's, Anthea Hendrix Toutges,' Motion to Continue the February 25, 2019 trial date is moot, as the February 25, 2019 trial date was continued prior to the motion's adjudication.

11. That this Honorable Court does hereby find and order that the Respondent's, Jennifer McKaig's, Motion to Amend her original Petition for Full Conservatorship, as filed on February 1, 2019, is hereby granted by agreement of the Parties. As such, the Respondent's, Jennifer McKaig's, controlling Petition for a Full Conservatorship/expansion of her already existing conservatorship shall be the Amended Petition, filed by Mrs. McKaig on or about July 21, 2020. The Petitioner, Anthea Hendrix Toutges, is granted ten (10) days to respond to the Amended Petition, as filed by the Respondent, Mrs. McKaig.

12. That, in regards to the Petitioner's, Mrs. Anthea Hendrix Toutges,' requests for time for to conduct discovery and/or for a continuance (as raised during this hearing by oral motion but not by any properly filed motion/unresolved motion), the Court notes that multiple Scheduling Orders have been entered in this case and served upon all Parties, one which set the trial of this matter for April 30, 2020 and contained discovery deadlines

9

prior to that date, one that set this matter for trial on June 30, 2020 and contained discovery deadlines prior to that date and an April 15, 2020 Scheduling Order which set the trial of this matter for August 12, 2020 and contained discovery deadlines prior to trial. As such, all Parties to this case have had ample notice that discovery, etc., should be timely completed and as to all deadlines for the same and of the trial date for many months. The Court further finds and holds that the Petitioner, Anthea Hendrix Toutges, has been *pro se* for an extended period of time and was put on notice when her prior attorney withdrew that she had the option of hiring another attorney. Although the Court notes that courts are to be as helpful as legally permissible to pro se litigants, *pro se* litigants are still to be held to the same standard as any other person in a court proceeding. The Scheduling Orders in this case are all extremely clear and set forth the dates by which all pre-trial matters shall be concluded, the number of days prior to trial during which each pre-trial matter shall be concluded and deadlines for discovery, depositions and all other matters in this case. The Scheduling Orders can be read by anyone and understood as to all matters set forth therein. If the Petitioner, Anthea Hendrix Toutges, decided not to hire counsel after being served with pleadings and/or after receiving the Scheduling Orders and/or prior to the expiration of the required timeframes therein, that is a decision that she made. When the court sets a trial date, everyone is put on notice of the same. The Court further finds that it would be very prejudicial to allow any further continuance in this case, given the time that has passed since the original filing date and the expense associated with the same, as well as, with reviewing and/or responding to the numerous, duplicative and/or repeat filings

10

in this case, as evidenced by all of the Motions which have been stricken and/or withdraw today. Pursuant to the Scheduling Order, the trial will proceed and there shall be no more time/continuances granted for discovery or otherwise.

13.    That all Motions to Stay related to the Court of Appeals and/or District Court cases are moot, as the District Court case and Court of Appeals case have both been dismissed.

14.    That this Honorable Court does hereby find and hold that the Respondent's, Jennifer McKaig's, July 16, 2020 Motion to Strike and/or Exclude the Respondent's most recent Amended Petition and/or Motion to Dismiss and/or Stay and/or any medical reports, letters from doctors, Diagnostic Psychological Reports, letters, police reports/event records and/or Affidavits, as filed therewith and/or referenced therein, and/or in the Notice of Filing of Exhibits and/or Accompanying Exhibits filed therewith and/or thereafter and all exhibits filed with either the Amended Petition, the Moton and/or the Accompanying Exhibits and/or Notice of Filing of Exhibits, wherever the same appear in this Honorable Court's file is hereby granted, as the Petitioner's. Anthea Hendrix Toutges', counsel has stipulated that the exhibits were hearsay and/or admissible and the Court also finds and holds the same. Further, the Petitioner's, Anthea Hendrix Toutges,' has stipulated, through her counsel, that the same should be stricken. As such, it is hereby ordered that the above referenced Motion, Amended Petition, Accompanying Exhibits and/or Notice of Filing of Exhibits and all Exhibits referenced or attached thereto, are hereby stricken from this Honorable Court's file wherever they appear. However, and per

11

the Petitioner's counsel's request, the Court makes clear that the Court's ruling does not mean that the stricken materials would not potentially be admissible at trial if properly authenticated and presented in the proper way, pursuant to the Tennessee Rules of Evidence and/or the Tennessee Rules of Civil Procedure. However, the Court instructs the Petitioner, Anthea Hendrix Toutges, that these types of exhibits/documents should not simply be dumped into the Court's record but rather should be offered as proof at trial, subject to all possible evidentiary, etc., objections. The Court grants the Petitioner's, Anthea Hendrix Toutges,' counsel's request to file a legal brief regarding the report of Dr. Boddy and its possible admissibility without Dr. Boddy's appearance at trial and/or at a properly scheduled and agreed upon deposition and orders that the same shall be submitted by no later than five actual days (not business days) from the date of this hearing. However, there are no requirements for briefs in this Court.

15.     That, in regards to, the Respondent's, Jennifer McKaig's, Motion to Quash the Subpoena that was served upon her on July 17, 2020 by the Petitioner, Anthea Hendrix Toutges, the Petitioner's, Anthea Hendrix Toutges' attorney has advised the Court that the main reason for the issuance of the Subpoena was due to the Contempt hearing that was anticipated to take place on the date of this hearing, which is now moot and that he will withdraw the Subpoena and the same is hereby ordered. The Court further finds and orders that the Petitioner's, Anthea Hendrix Toutges', counsel has advised that he is withdrawing any and all Subpoenas issued to the Respondent, Jennifer McKaig and/or her legal counsel, the *Guardian Ad Litem* and/or the *Attorney Ad Litem*, by the Petitioner, Anthea

12

Hendrix Toutges, which purport to require any party and/or attorney to produce documents/discovery, in violation of the Scheduling Order's discovery and the same is hereby ordered.

16.    That the Court grants the Respondent leave to file two Motions relevant to issues that have arisen outside of the parameters of the Court's Scheduling Order, a Motion for a Restraining Order for her client against the Petitioner, Mrs. Anthea Hendrix Toutges, and a Motion to for an Order taxing all costs and attorney's fees for the *Guardian Ad Litem* and/or the *Attorney Ad Litem* and/or for an order awarding the Respondent, Jennifer McKaig, a judgment for any and all attorney's fees and/or costs which she has incurred in this matter against the Petitioner, Anthea Hendrix Toutges, and for an Order levying, garnishing, etc., the same from any inheritance proceeds that the Petitioner, Anthea Hendrix Toutges may or does receive from the estate of Bruce Hendrix and requiring that any such inheritance proceeds due and payable to the Petitioner, Anthea Hendrix Touges, from the estate shall be paid into the Anderson County Chancery Court for further allocation after judgment and/or requiring the personal representative of the estate to give a full accounting of any inheritance funds paid to and/or due to the Petitioner, Anthea Hendrix Toutges and when the same have or will be paid and/or to send any and all inheritance funds due to the Petitioner, Anthea Hendrix Toutges, to the Anderson Chancery Court for satisfaction of the judgments ordered by this Honorable Court, both of which, shall be heard at the final trial of this matter.

17.    That the Court's July 22, 2020 Memorandum Opinion is attached hereto and

13

Incorporated herein.

18.   All other matters are reserved for further hearing.

**ENTERED** and **ORDERED** this _2 1st_ day of _august_ , 2020,

**NUNC PRO TUNC,** July 22, 2020.

HONORABLE M. NICHOLE CANTRELL

**APPROVED FOR ENTRY:**
**PETERSON WHITE LAW FIRM**

Jodi B. Loden, BPR# 026440
6330 Baum Drive
Knoxville, TN 37919
(865) 909-7320

**LAW OFFICE OF JENNIFER L. CHADWELL, LLC**

Jennifer L. Chadwell, BPR# 022723 w/ exp perm JBC
240 West Tennessee Avenue
Oak Ridge, TN 37830
(865) 685-0264

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing Order was duly served upon all counsel of record herein by mailing a copy of same, postage pre-paid, via First Class U.S. Mail, addressed as follows:

**Jodi B. Loden**
**Attorney for Respondent**
**6330 Baum Drive**
**Knoxville, TN 37919**

**Mitchell R. Miller**
**1616 Westgate Circle**
**Brentwood, TN 37027**

**Anthea Hendrix Toutges**
*Pro Se*
**107 Flenniken Ave, Apt. 201**
**Knoxville, TN 37920**

**Jennifer Chadwell**
*Guardian Ad Litem*
**240 West Tennessee Aveue**
**Oak Ridge, TN 37830**

**H. Daniel Forrester**
*Attorney Ad Litem*
**711 S. Charles G. Seivers Blvd.**
**Clinton, TN 37716**

This **21** day of _____**August**_____, 2020.

COURT CLERK

# EXHIBIT Q – Trial Subpoena 1

| SUBPOENA | STATE OF TENNESSEE | Docket Number |
|---|---|---|
| [x] to testify  [ ] duces tecum | **ANDERSON COUNTY** | **01CH1436** |
| [ ] to take deposition  [ ] for medical records | **CHANCERY COURT** | |
| *(see HIPAA requirement below) | AUG U 4 2020 | |

You are hereby commanded to summon

Method of Service:

Jackie McMullen
Helen Ross McNabb Center
158 Fairbanks Rd
Oak Ridge, TN 37830

- ( ) Anderson County Sheriff
- ( ) Commissioner of Insurance ($)
- ( ) Secretary of State ($)
- ( ) Other TN County Sheriff ($)
- (X) Private Process Server
- ( ) Other

$$ (Attach Required Fees)

Personally to be and to appear on __August 12__ at __9:00 a.m.__ at __100 Main Street__ __Third floor__

at __Anderson County Chancery Court__

In the city of Clinton then and there to testify and give evidence on behalf of __Anthea Hendrix__ in the case of

__Anthea Hendrix__ against __Jennifer McKaig regarding Restraining Order and Amended Conservatorship__

This you will in no wise omit, under the penalty prescribed by law.

Herein fail not and have you then and there this Writ.

Tested and written this __3__ day of __August__, 2020

**Harold P. Cousins, Jr., Clerk & Master**

Clerk

By_____ D.C.

FILED
2020 AUG -3 PH 12:
HAROLD P COUSINS, JR
CLERK & MASTER

**HIPAA NOTICE**

A copy of this subpoena has been provided to counsel for the patient or t the patient by mail or facsimile on the

_____ day of _____, 20____ so as to allow him/her seven (7) days to:

(A) Serve the recipient of the subpoena by facsimile with a written obj jection to the subpoena, with a copy of the notice by facsimile to the party that served the subpoena, and

(B) Simultaneously file and serve a motion for a protective order consi istent with the requirements of T.R.C.P. 26.03 and 26.07.

If no objection is made within seven (7) days of the above date, you st hall process this subpoena and produce the documents by the date and time specified in the subpoena. The signature t of counsel or party on the subpoena is certification that the above notice was provided to the patient.

_____
Attorney or Party Signature for HIPAA notice

90

## Return of Service

To be served:
Jackie McMullen
Helen Ross McNabb Center
158 Fairbanks Rd
Oak Ridge, TN 37830

(Check one):
(✓) I **served** the *Subpoena*

Via: _Kimberly Collins_

Date served: 8-5-2020

( ) I **failed to** serve the *Subpoena*

Date Attempted: _____

_K. West_
Officer/Process Server

_Kimberly Collins, MSSW_

2020 AUG -6 AM 9: 16
FILED
HAROLD P COUSINS JR
CLERK & MASTER

## EXHIBIT R – Trial Subpoena 2

10 Hans Rd

**SUBPOENA**

| | | |
|---|---|---|
| [X] to testify | [ ] duces tecum | |
| [ ] to take deposition | [ ] for medical records | |
| *(see HIPAA requirement below) | | |

**STATE OF TENNESSEE**
**ANDERSON COUNTY**
**CHANCERY COURT**

Docket Number

**01CH1436**

AUG 0 4 2020

You are hereby commanded to summon

Method of Service:

Kimberly Collins
Helen Ross McNabb Center
158 Fairbanks Rd
Oak Ridge, TN 37830

( ) Anderson County Sheriff

( ) Commissioner of Insurance ($)

( ) Secretary of State ($)

( ) Other TN County Sheriff ($)

(X) Private Process Server

( ) Other

$$ (Attach Required Fees)

Personally to be and to appear on __August 12__ at __9:00 a.m.__ at __100 Main Street__ __Third floor__

at _Anderson County Chancery Court_

In the city of Clinton then and there to testify and give evidence on behalf of __Anthea Hendrix__ in the ase of

__Anthea Hendrix__ against __Jennifer McKaig regarding Restraining Order and Amended Conservatorship__

This you will in no wise omit, under the penalty prescribed by law.

Herein fail not and have you then and there this Writ.

Tested and written this __3__ day of __August__, 2020

**Harold P. Cousins, Jr., Clerk & Master**

Clerk

By: _____ D.C.

*(right margin, rotated text)* 2020 AUG - 3 PM 12: 09 — FILED HAROLD P COUSINS JR CLERK & MASTER

**HIPAA NOTICE**

A copy of this subpoena has been provided to counsel for the patient or i the patient by mail or facsimile on the

_____ day of _____ , 20 ___ so as to allow him/her seven (7) days to:

(A) Serve the recipient of the subpoena by facsimile with a written obi jection to the subpoena, with a copy of the notice by facsimile to the party that served the subpoena, and

(B) Simultaneously file and serve a motion for a protective order consi istent with the requirements of T.R.C.P. 26.03 and 26.07.

If no objection is made within seven (7) days of the above date, you si hall process this subpoena and produce the documents by the date and time specified in the subpoena. The signature i of counsel or party on the subpoena is certification that the above notice was provided to the patient.

Attorney or Party Signature for HIPAA notice

**Return of Service**

To be served:
    Kimberly Collins
    Helen Ross McNabb Center
    158 Fairbanks Rd
    Oak Ridge, TN 37830

(Check one):
    I **served** the *Subpoena*

Via:    in person

**Date served:** 8-5-2020

( )    I **failed to serve** the *Subpoena*

**Date Attempted:** _____

K. West
_____
Officer/Process Server

Kimberly Collins, MSSW

2020 AUG -6 AM 9:16
FILED
HAROLD P COUSINS, JR
CLERK & MASTER

EXHIBIT S – Certified Affidavit of Elisa Katschka

## NOTARY CERTIFICATE

Acknowledgment Certificate Form:

On this _10_ day of _March_, 20 _20_, before me personally appeared
_Elisa m Katschka_, to me known to be the person (or persons)
described in and who executed the foregoing instrument, and acknowledged that such person (or
persons) executed the same as such person (or person's) free act and deed. Witness my hand, at
office, this _10_ day of _March_, 20 _20_.

Notary's Signature Seal

My commission expires: _6/18/2020_

## CERTIFIED AFFIDAVIT

The following is a written witness statement, with which the undersigned testifies under oath with the understanding that this Affidavit will be presented as testimony to the Anderson County Chancery Court in Case No. 01CH1436.

Question: How long have you known the Petitioner, Anthea Hendrix?

Anthea Hendrix and I have known each other for approximately 25 years. We met in the Spring of 1995 in Kirkland, Washington at a church singles group. We have remained friends since that time.

Question: How would you describe Ms. Hendrix's relationship with her son, Joel McKaig?

Joel and Anthea are very close. Anthea's love for Joel and desire for the very best for him is at the core of her being. During the time that Anthea lived in Mount Vernon, Ohio and Joel also lived in Mt. Vernon I spent quite a bit of time with them together. I live in Columbus, OH. Anthea and Joel sometimes drove the long drive from Mt. Vernon, Ohio to go to church with me. Love and friendship between them as a mom and son was very evident.

Question: To the best of your knowledge, is Ms. Hendrix a loving and supportive mother to her son, Joel McKaig? If so, how did she demonstrate support for her son?

Anthea is a loving and caring woman and a loving and caring mother. I have seen her do everything she can to help and support Joel. She has been his support and advocate in the medical system. She has given him help and support in any way she possibly could. For example, once when Anthea was living in Tennesse. and Joel was living in Ohio Anthea called and asked if I could take Joel to the Emergency Room. I picked up Joel and we went to the Emergency Room together. Joel talked to Anthea while we were in the Emergency Room and he was able to get the help at the hospital that he needed.*Continued Below.

Question: Are you aware of any family problems that made Ms. Hendrix's job as a mother and former medical conservator for her son more difficult? If so, please describe.

I am aware of a family situation in that Anthea's daughter, Jennifer, has put in place a no contact order that does not allow Anthea to contact  Joel. Neither Anthea or Joel want this. I cannot say strongly enough that I think this is a horrific and unjust situation. Anthea has been Joel's closest family and she has provided his most critical support. They love each other and have a deep, deep mother and son bond.

* Continued from first question.
Anthea and I have often prayed for her children. Anthea has told me that the reason she worked so hard to develop a career as a technical writer is so that she would have the financial resources to help her children.

Question: If Ms. Hendrix were to become her son's medical conservator again, do you feel that her daughter Ms. McKaig should be restrained from causing further problems for Ms. Hendrix?

Yes, I wish all the very best for Anthea's daughter, Jennifer, but I think that action she has taken has been unjuststand very harmful. The action of preventing Joel and Anthea from seeing each other is so unjust and extremely detrimental that I think it is important that action be taken so that a situation like this will not occur again.

Question: Do you recommend that Ms. McKaig be ordered by this Court to attend family counseling with Ms. Hendrix via teleconference for a period of one year with costs shared between the two?

I believe that family counseling would be very helpful in this case.

Elisa M. Katochka
Signature

3/10/20
Date

## IN THE CHANCERY COURT FOR ANDERSON COUNTY, TENNESSEE

ANTHEA HENDRIX TOUTGES,         )
    Petitioner,                  )
                               )

v.                               )      **No. 01CH1436**
                               )**(NOTICE OF ENTRY REQUESTED)**
                               )

JENNIFER McKAIG,             )
    Respondent.                )

IN RE:         __THE LIMITED CONSERVATORSHIP OF JOEL McKAIG__

### ORDER

This cause came to be heard on the 21st day of August, 2020, for this Court to

determine the amount of attorney fees and costs to be taxed against the

Petitioner, Anthea Hendrix Toutges. This Court, already finding that the costs and fees

shall be taxed against the Petitioner, do hereby find and order as follows:

    1.    That the attorney fees, costs, and expenses of the Respondent's Attorney,

Jodi B. Loden, is hereby awarded in the amount of $78,784.20.

    2.    That the Guardian Ad Litem, Jennifer Chadwell, is awarded attorney fees

in the amount of $19,040.00

    3.    That the attorney ad litem, Henry Daniel Forrester, is hereby awarded

$17,285.00 in attorney fees.

    4.    That pursuant to Rule 62.01 of the Tennessee Rules of Civil Procedure, this

Honorable Court rules that the initial stay on the Court's attorney fees and costs

1

**RECEIVED**
AUG 2 4 2020
BY:_____

judgment shall be lifted as the evidence in this case and the past conduct of Petitioner, Anthea Hendrix Toutges, the party against whom the judgment is taken, is likely to attempt to fraudulently dispose of, conceal, and or remove her portion from inheritance proceeds from the Estate of Bruce Hendrix and/or other assets she may have so as to attempt to avoid enforcement of this Court's judgments, thereby endangering the satisfaction of the judgment.

The Court further finds that the billing, time, and expense spent on this case and presented by all counsel of record was appropriate, specifically detailed, and the hourly rate billed was appropriate and well within the fee average this Court has viewed when awarding fees on other cases.

IT IS THEREFORE ORDERED that the Respondent's Attorney, Jodi B. Loden, is hereby awarded that Respondent's attorney, Jodi B. Loden, is awarded judgment against the Respondent, Anthea Hendrix Toutges, in the amount of $78,784.20 for which execution may issue if necessary. The Stay on the collection of the judgment is waived pursuant to Tennessee Civil Procedure Rule 62.01.

IT IS THEREFOR ORDERED that the Guardian Ad Litem, Jennifer Chadwell, is awarded judgment Against the Petitioner, Anthea Hendrix Toutges, in the amount of $19,040.00, for which execution may issue if necessary. The Stay on the collection of the judgment is waived pursuant to Tennessee Civil Procedure Rule 62.01.

IT IS THEREFORE ORDERED that the Attorney Ad Litem, Henry Daniel Forrester is awarded judgment against the Petitioner, Anthea Hendrix Toutges, in the

2

amount of $17,285.00 for which execution may issue if necessary. The Stay on

collection of this judgment is waived pursuant to Tennessee Civil Procedure Rule

62.01.

ENTERED and ORDERED this _10th_ day of _September_,

2020.

_[signature]_
HONORABLE M. NICHOLE CANTRELL

APPROVED FOR ENTRY:

_[signature]_

H. Daniel Forrester, III
Attorney Ad Litem
224 N. Main Street
Clinton, TN 37716
(865) 4547-7900

_[signature]_ by permission
Jodi Loden
Attorney for Jennifer McKaig
Peterson White Law Firm
6330 Baum Drive
Knoxville, TN 37919

_[signature]_ permission
Jennifer Chadwell
Guardian Ad Litem
P.O. Box 4038
Oak Ridge, TN 37830

## IN THE CHANCERY COURT FOR ANDERSON COUNTY, TENNESSEE

|                                       |     |                  |
|---------------------------------------|-----|------------------|
| ANTHEA HENDRIX,                       | )   |                  |
|     Petitioner,   | )   |                  |
| v.                                    | )   | No.: 01CH1436    |
| JENNIFER MCKAIG,                      | )   |                  |
| *In re* JOEL MCKAIG,                  | )   |                  |
|     Respondent/Ward. | )   |                  |

---

### MOTION TO SET ASIDE TRIAL JUDGMENTS
---

**COMES NOW** Anthea Hendrix, Petitioner Pro Se, and moves this Court pursuant to Tenn. R. Civ. P. 55.02 and 60.02 to set aside the orders issued by this Court on August 13, 2020 for reasons of fraud on the court by the Respondent and by the officers of this Court, for which an objection and motion to quash execution of order will also be heard at 8:30 a.m. on September 10, 2020 in the Anderson County Chancery Court via Zoom. Petitioner would show the Court:

### Tenn. R. Civ. P. 60.02, Mistakes – Inadvertence – Excusable Neglect - Fraud

This Court has erred in its judgments through mistakes, inadvertence and especially through fraud on the Court perpetrated by Respondent Jennifer McKaig, Ms. McKaig's counsel, Jodi Loden, and the Guardian Ad Litem (GAL), Jennifer Chadwell. The Ward's Attorney Ad Litem (AAL), Daniel Forrester, has passively participated in fraud on the court by ceasing to advocate for the Ward against the restraining orders after the March 6, 2019 TRO proceeding when Chancellor Cantrell dismissed Mr. Forrester's testimony on the Ward's behalf. Mr. Forrester made no attempt to arrange transportation for the Ward to attend any of the numerous restraining order hearings before trial, nor did he attempt to arrange for the Ward to testify by phone or via Zoom before trial. Further, Mr. Forrester did not file one motion on the Ward's behalf and refused to help him put together an affidavit for the July 15, 2019 court hearing on the no-contact order. This entire case has been calculated, orchestrated fraud on the court by the Respondent and the officers of this court explained in detail as follows:

1

*At the February 11, 2019 court proceeding*, Chancellor Nicole Cantrell refused to admit the Ward's affidavit (Exhibit A) as evidence against the Temporary Restraining Order (TRO), for which Respondent had no admissible evidence. The Ward's AAL had withdrawn from the case due to conflict of interest and the Ward was unrepresented. The Ward had a legal right to testify against the TRO by any means available, including an affidavit through opposing counsel pursuant to T.C.A. § 34-3-106 and § 34-3-108(f).

*At the February 25, 2019 court proceeding*, the GAL and not counsel for the Respondent motioned this Court for a continuance after Respondent made no effort to comply with this Court's February 11, 2019 Order (Exhibit B) for an immediate medical evaluation to determine whether a TRO was warranted. The GAL suborned perjury in her affidavit (Exhibit C), avowing that Dr. Amin had not been available all month and would not be available until Feb. 27, 2019.

*At the March 6, 2019 TRO Proceeding*, the following fraud and abuses occurred:

1. Although counsel for Petitioner provided evidence that Jennifer Chadwell submitted a false affidavit to the Court regarding Dr. Amin's availability (Exhibit D), *this Court refused to address her fraud on the court. **Bulloch v. United States***, 763 F.2d 1115, 1121 (10th Cir. 1985).

2. Respondent had been ordered to obtain an immediate medical evaluation to determine whether a TRO was warranted, but the Respondent refused. Instead, Respondent provided inadmissible hearsay from Dr. Amin, who wrote that he barely knew the Ward and relied on the group home manager's input regarding Petitioner's visits (Exhibit E) and a report by the Ward's psychologist who only reported on the Ward's progress without conducting an evaluation, which would have necessitated interviewing all parties.

3. This Court admitted Dr. Amin's hearsay as valid medical evidence although neither he nor the group home manager had ever met the Petitioner and neither had personal knowledge of Petitioner's visits. No one testified at the hearing as required under T.R.C.P. 65.04(6) for the TRO

2

to become a restraining order and injunction, yet the TRO was left in place indefinitely. *Milton v. Harness*, No E2017-00092-COA-R10-CV, 2017 Tenn. App. LEXIS 154, at *13 (Ct. App. Mar. 3, 2017) (citing *Smith v. Smith*, Appeal No 01A01-9511-CH00536, 1996 Tenn. App. LEXIS 585, at *9 (Ct. App. Sep 18, 1996.))

The Ward provided a handwritten letter to this Court on March 6, 2019 (Exhibit F) disputing the Respondent's unsubstantiated allegation that Petitioner's visits caused him to have setbacks and an explosive episode. However, Chancellor Cantrell refused to admit the Ward's handwritten letter in violation of T.C.A. § 34-3-106 and § 34-3-108(f).

4. AAL Daniel Forrester attempted to advocate for the Ward against the TRO on March 6, 2019, but the Chancellor dismissed the AAL's testimony in violation of T.C.A. § 34-3-106.

This court failed in its constitutional duty to admit the Ward's testimony by any means he had available, whether by affidavit or petition through opposing counsel or from his mother, pursuant to T.C.A. § 34-3-106 and § 34-3-108(f). Clearly, this Court was not concerned about protecting the Ward, but only with preventing the Ward from testifying since his testimony was crucial to Petitioner's defense against the TRO. The decision to dismiss the testimony of a grown man based on his disability was calculated, orchestrated fraud on the court by the Respondent and the officers of this court, which requires setting aside the restraining orders and all judgments of this court. *Kenner v. C.I.R.*, 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."

*At the March 28, 2019 TRO Proceeding*, Chancellor Cantrell issued a bench order instructing all parties to agree on a doctor for the medical evaluation or bring her three names each to choose from. On April 4, 2019, all parties agreed to Dr. Keith Caruso for the evaluation (Exhibit G includes Dr. Caruso's CV and evidence that all parties agreed to Dr. Caruso for the evaluation).

3

Petitioner had been forced to motion for a second order for a medical evaluation after Respondent refused to comply with the first order. This Court did not enforce the orders or hold Respondent accountable for violating them.

## SUP. CT. RULE 10, CANON 2.3, BIAS, PREJUDICE AND HARASSMENT

*At the July 8, 2019 court proceeding*, Respondent demonstrated contempt for this court when she motioned for another medical evaluation with her choice of doctor after she had violated both the February 11, 2019 Order and the March 28, 2019 bench order for an immediate medical evaluation. *Three months after Dr. Caruso began his evaluation in compliance with the March 28, 2019 bench order*, the Chancellor waved her bench order and granted Respondent's motion, forcing Petitioner to pay $6,400 for a medical evaluation Respondent had been ordered to obtain for her TRO. Rule 10 § 2.3(b) requires:

> "A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so."

*In re: Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010), "Discretionary decisions must take the applicable law and relevant facts into account." *Konvalinka v. Chattanooga–Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn.2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn.1996). The Chancellor and the other officers of this court have demonstrated open hostility and unlawful harassment toward the Petitioner in court proceedings. This never happened when Respondent was represented by Mr. Routh or Ms. Whitfield. The Chancellor is required under Tenn. Sup. Ct. Rule 10, Canon 2.3(C) to:

> "A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, *age*, sexual orientation, *marital status*, *socioeconomic status*, or *political affiliation*, against parties, witnesses, lawyers, or others."

4

*At the July 15, 2019 court proceeding*, the following fraud and abuses occurred:

1.  After the Ward had tried unsuccessfully for two weeks to reach his attorney for help getting to the July 15 court proceeding or putting together an affidavit for the hearing, Petitioner agreed to help her son with his affidavit to give him a voice in the proceedings pursuant to T.C.A. § 34-3-106 and § 34-3-108(f). Although the Ward had a legal right to testify by any means available and the Petitioner had a legal right to help her son pursuant to T.C.A. § 34-3-108(f), Petitioner was charged with contempt of the TRO and placed under a no-contact order. This violated the Ward's constitutional rights per Title 18, U.S.C., Section 242, Deprivation of Rights Under Color of Law:

> "It is a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S."

This also violated the Petitioner's constitutional rights pursuant to Title 18, U.S.C., Section 241, Conspiracy Against Rights:

> "It is unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States, (or because of his/her having exercised the same)."

2.  Counsel for Petitioner, Jodi Loden, suborned aggravated perjury by fabricating an affidavit with false allegations against the Petitioner (Exhibit H) to expand the TRO to a no-contact order. Dr. Rakesh Amin perjured himself when he signed the false affidavit, which conflicted with the statements in his February 27, 2019 affidavit, in which he wrote that he barely knew the Ward and had to rely on the group home manager's input. This court participated in fraud on the court by admitting the false affidavit as valid medical evidence against the Petitioner and even after Petitioner proved the affidavit was false, the Chancellor refused to address this fraud on the court by an officer of the court. **This was the second time this court refused to address fraud on the court by an officer of the court.** Petitioner has repeatedly shown this court evidence that the basis for the no-contact order was a false affidavit.

5

*At the July 22, 2020 pre-trial hearing*, the following fraud and abuses occurred:

1. The Chancellor advised counsel for Respondent to delay her motion to dismiss Petitioner's case and tax all attorneys' fees to Petitioner until trial. The Chancellor informed Petitioner's counsel that Petitioner's amended motions for removal of conservator were invalid since Petitioner did not have leave of the court to file them. The Chancellor gave counsel for the Petitioner five calendar days to re-file Petitioner's November 5, 2018 amended petition for removal of conservator (Exhibit I, August 27, 2020 Amended Petition). While the Petitioner was unaware that this would place her in a position where the Chancellor could dismiss her as yet non-existent case and have the entire case that involved a series of restraining orders filed by the Respondent, taxed to the Petitioner, the Chancellor was well aware, which is why the Chancellor advised Respondent's attorney to hold off on her motion to dismiss Petitioner's case. *This was further fraud on the court by an officer of the court*. Tenn. R. Civ. P. 60.02 provides:

> "On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) *fraud (whether heretofore denominated intrinsic or extrinsic)*, misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment."

2. The Chancellor denied Respondent's counsel a continuance to prepare a defense for his client although the Chancellor knew that counsel did not have adequate time to prepare without a continuance. The Chancellor stated in open court that she was justified in ruling against the Petitioner because of Petitioner's "behavior in the beginning of the case." This was an admission of unlawful prejudice and injustice against Petitioner pursuant to Sup. Ct. Rule 10, Canon 2.3, making the judgments of this court null and void.

6

**On July 27, 2020, Petitioner re-filed her Amended Petition for Removal of Conservator**
(Exhibit I) in which she proposed sharing conservatorship with Respondent pursuant to T.C.A. §
35-50-107, which requires non-resident conservators share conservatorship with a Tennessee
resident, and T.C.A. § 34-3-103 that requires a close relative (spouse, child, parent) have priority in
serving as conservator. Petitioner set forth reasons why the Respondent should not serve as the
Ward's full conservator unless she shares conservatorship with a resident and close family member.

*At the August 12 and 13, 2020 trial*, the following fraud and abuses occurred:

3.  Petitioner produced three witnesses with personal knowledge of her loving, supportive
relationship with her son, the Ward, and the fact that she had acted responsibly as his conservator by
having the Ward hospitalized for group home placement in August 2017—for which the GAL
recommended removing Petitioner's conservatorship and transferring it to Respondent. Elisa
Katschka, a family friend of 25 years, spoke with the Ward in late 2019 and confirmed that he was
opposed to the restraining order and very much wanted to see and speak with his mother.

4.  Respondent did not produce one witness at trial with knowledge of Petitioner's visits
with or relationship with her son, but subpoenaed two police officers to testify regarding issues that
were irrelevant to the issues at trial. Respondent's attorney made no effort to show cause for why
the restraining order should remain in effect and instead prosecuted the Petitioner for a moot case
that was dismissed and expunged from Petitioner's record in April 2015, a case that involved a false
charge that resulted in Petitioner's daughter's suicide on New Year's Eve 2014.

5.  The officer who went to the scene when Petitioner's late daughter Annelie Sanford
alleged that her mother had "pushed her" had no clear memory of the incident while Petitioner has
the audio of the officer's conversation with her late daughter, in which she admitted that she had no
marks or bruises or any evidence of assault and that Petitioner had no history of violence. Petitioner
asked the officer if she was aware that Blount County police have a rule: If anyone calls 911 for a

7

domestic disturbance, someone *always* goes to jail. This twists the statute **that requires evidence. There was no evidence of assault, no history of assault and no witnesses**. Counsel for Respondent exercised unlawful jurisdiction in retrying the Petitioner for a case that was dismissed by the criminal court and expunged.

6. The second officer performed a welfare check on Petitioner's late daughter at her request. The officer did not answer Petitioner's question honestly regarding the fact that he stood in the doorway of Ms. Sanford's apartment watching Mr. Sanford roll joints at a table covered with marijuana. Petitioner's son-in-law Michael Sanford called her about it after the officer left, laughing because the officer looked right at his illegal marijuana and did nothing.

7. Absolutely no evidence was presented at trial to justify dismissing Petitioner's case based on an expired amended petition for removal of conservator the Chancellor instructed Petitioner to re-file in order to tax everyone's attorney's fees to her. Petitioner presented evidence and valid reasoning for why Respondent should not lawfully serve as full conservator of the Ward unless the conservatorship is shared by Petitioner, the Ward's nearest relative. *This is a violation of Title 18, U.S.C., Section 241, Conspiracy Against Rights.*

8. Absolutely no evidence was presented for extending the no-contact order against the Petitioner. No witnesses came forward at trial to testify that the Petitioner's visits with her son harmed him in any way or that Petitioner had caused any problems with his group home. The Ward did not return to his first group home because he was unhappy there and refused to return, not because Petitioner called there too often or caused any trouble. Respondent lied on the witness stand and wrongly impugned her mother with lies just as she has done for years. Respondent also lied about her employment and the fact that she had surgery on her knee for a tumor. The no-contact order is unjust and unsupported by the law and should be set aside pursuant to Tenn. R. Civ. P. 60.02 and Tenn. Sup. Ct. Rule 10, Canon 2.3.

8

9. This court demonstrated unlawful bias and prejudice by ruling in favor of the Respondent on every count although Respondent presented no evidence or witnesses to support her allegations. If the Respondent had brought one witness to trial who could corroborate her allegations, the court would have been justified, but she brought no witnesses and no evidence. This court was unjust in its verdicts against the Petitioner.

10. The Respondent did not provide clear and convincing evidence for a restraining order against Petitioner. It is unlikely that Petitioner works for CDC as she claimed at trial since the CDC would not allow their data analyst to publish inflammatory political articles on a public forum such as Respondent's "Analyzing Trump's Tweet Obsession." The fact that Petitioner posted an opinion of the article on a public forum that did not violate community standards and which Respondent was free to remove at will, did not constitute sufficient evidence for a restraining order against Petitioner. Neither were the screenshots of Petitioner's private Facebook posts to her personal Facebook friends, which Respondent accessed without Petitioner's permission. That verdict was neither substantiated by witness testimony nor clear and convincing evidence and should therefore be set aside in accordance with Tenn. R. Civ. P. 60.02.

11. The Chancellor's order to wave the stay required under Tenn. R. Civ. P. 54.04 in order to tax everyone's attorneys' fees to Petitioner's inheritance in Washington State probate in violation of Tenn. R. Civ. P. 54.04 and T.C.A. § 25-5, Lien of Judgment, Section 101 and § 25-5-103 that limits judgments to real property owned by Petitioner is further evidence of fraud on the court by officers of the court and should therefore be set aside pursuant to T.R.C.P. 60.02 and Sup. Ct. Rule 10, Canon 2.3, and Tenn. R. Civ. P. 54.04, T.C.A. § 25-5-101 and § 25-5-103.

***The court has a duty to address fraud when it is brought to the court's attention***. This court's refusal to address fraud on the court was intentional and orchestrated by the Respondent and

every officer of this court. This fraud and unlawful prejudice in favor of the Respondent requires setting aside all of this court's verdicts as tainted by fraud and therefore null and void.

**WHEREFORE**, Petitioner moves this court to set aside the verdicts of this court pursuant to Tenn. R. Civ. P. 60.02, Sup. Ct. Rule 10, Canon 2.3, Tenn. R. Civ. P. 54.04, T.C.A. § 25-5, Lien of Judgment, Section 101 and § 25-5-103. Any unlawful judgment ordering attorney's fees taxed to Petitioner's inheritance in Washington State probate will be quashed upon appeal.

Submitted this 4th day of September, 2020.

Respectfully submitted by:

*Anthea Hendrix*

Anthea Hendrix, Petitioner Pro Se
107 Flenniken Ave, Apt 201
Knoxville, TN 37920
Phone: 615-891-8337
Email: akh129@yahoo.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing Motion was duly served upon all counsel of record herein by mailing a copy of the same via e-mail:

Jodi B. Loden, Attorney for Respondent
jodi.loden@petersonwhite.com

Jennifer Chadwell, Guardian Ad Litem
Jchadwell@jenniferchadwellattorney.com

H. Daniel Forrester, Attorney Ad Litem
forresterlaw@comcast.net

*Anthea Hendrix*

Anthea Hendrix, Petitioner Pro Se